|  |  |
|---|---|
| IN THE UNITED STATES DISTRICT COURT<br>FOR THE EASTERN DISTRICT OF PENNSYLVANIA | |
| SOLISHUM SUMER SHIELDS,<br><br>                Plaintiff<br>      v. | DOCKET NO. 5:20-CV-02999-CDJ<br>Honorable C. Darnell Jones, II. |
| RYAN WIEGAND, ALEXANDER BARRY,<br>JOSHUA LINAMEN, JAMES WISNIESKI,<br>NICHOLAS REGINELLA, COLTON<br>DEMBERGER, OFFICER RHOADES,<br>JOHN DOE, JOHN DOE, JOHN DOE<br>and EAST LAMPETER TOWNSHIP,<br><br>       Defendants | CIVIL ACTION - LAW<br><br>JURY TRIAL DEMANDED |
| **BRIEF IN SUPPORT OF PARTIAL MOTION TO DISMISS OF DEFENDANTS RYAN WIEGAND AND EAST LAMPETER TOWNSHIP PURSUANT TO FR.C.P. 12(b)(6)** | |

MARGOLIS EDELSTEIN

Date:  April 12, 2021         By: _____

ROLF E. KROLL
Attorney I.D. No. 47243
3510 Trindle Road
Camp Hill, PA  17011
PHONE: 717-760-7502
FAX: 717-975-8124
EMAIL: rkroll@margolisedelstein.com
*Counsel for Defendants*

**TABLE OF CONTENTS**

I.  FACTUAL AND PROCEDURAL HISTORY ………………………….…………1-5

II.  STATEMENT OF QUESTIONS PRESENTED ……………………….……5-6

      A.      WHETHER PLAINTIFF HAS FAILED TO STATE A FOURTEENTH AMENDMENT CLAIM UPON WHICH RELIEF CAN BE GRANTED BECAUSE PLAINTIFF ENGAGED IN WILLFUL FLIGHT FROM AUTHORITES AND HAS PLED GUILTY TO RECKLESS ENDANGERMENT AND DUI ARISING FROM HIS CONDUCT DURING THE PURSUIT?

            *1. Whether* Plaintiff's Claims Are Properly Analyzed Under the *Fourteenth Amendment*?

            *2. Whether Plaintiff's Failure to Plead facts to support an Intent to Harm is Fatal to the Substantive Due Process Claim Contained in Count I of the Complaint Given the Rapidly Evolving Nature of the Pursuit ?*

            3. *Whether Plaintiff's Claims Arising from the Pursuit Should Fail if Analyzed Under the Fourth Amendment Reasonableness Standard?*

      B.      WHETHER THE LAW PERTAINING TO POLICE PURSUITS WAS NOT SO CLEARLY ESTABLISHED SO AS TO DEPRIVE THE INDIVIDUAL OFFICERS OF QUALIFIED IMMUNITY AS A MATTER OF LAW?

      C.      WHETHER PLAINTIFF'S CLAIMS AGAINST EAST LAMPETER TOWNSHIP MUST FALIL AS A MATTER OF LAW?

      *D.      WHETHER PLAINTIFF'S CLAIMS ASSERTED UNDER THE EIGHTH AMENDMENT FAIL TO STATE A CLAIM AS A MATTER OF LAW?*

III. ARGUMENT …………………………………………………………………..6-26

IV. CONCLUSION …………………………………………………………..……………26

## TABLE OF AUTHORITIES

*Albright v. Oliver, 510 U.S. 266, 273 114, S.Ct. 807 (1994)* ………………………………….8

*Ashcroft v. Al-Kidd, 563 U.S. 731, 741, 131 S.Ct. 2074, 179 L.Ed 2d 1149 (2011)*...6, 20

*Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937 (2009)*…………………………....6, 7, 22

*Bell Atlantic Corp. v. Twombly, 550 U.S. 433 (2007)*…………………………………….6, 7

*Brown, 520 U.S. at 410*……………………………………………………………………… 23

*California v. Hodari D., 499 U.S. 621, 111 S.Ct. 1547 (1991)* …………………………….9

*Carroll v. Borough of State College, 854 F.Supp. 1184, 1190 (M.D.Pa. 1994)*…………9

*Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999)……………………………....23

*Chester County Intermediate Unit v. Pennsylvania Blue Shield,*
896 F. 2d 808, 812 (3d Cir. 1990) ………………………………………………………………4

*City of Canton, Ohio v. Harris,*
489 U.S. 378, 388, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989) …………………………23

*City of Revere v. Massachusetts Gen. Hosp.,*
*463 U.S. 239, 244, 103 S. Ct. 2979, 77 L. Ed. 2d 605 (1983)*……………………………25

*Connick v. Thompson, 563 U.S. 51, 131 S. Ct. 1350, 179 L. Ed. 2d 417 (2011)* ……. 23

*County of Sacramento v. Lewis, 523 U.S. 833, 845, 118 S.Ct. (1998)*………………9, 10

*Davis v. Township of Hillside, 190 F.3d 167, (3d Cir. 1999)*……………………12, 13, 15

*Fowler, 578 F. 3d at 210-11*……………………………………………………………………...7

*Graham v. Connor, 490 U.S. 386, 395 (1989)*………………………………………………8

*Guirguis v. Movers Specialty Services, Inc.,*
*No. 09-1104, 2009 WL 3041992, at p. 2 (3d Cir. Sept. 24, 2009)* ………………………7

*Ingraham v. Wright, 430 U.S. 651, 664, 97 S. Ct. 1401, 51 L. Ed. 2d 711 (1977)*……25

*Kendra v. Schroeter, 876 F.3d 424, 432, 448 (3rd Cir 2017)*…………………………..20

*Mammaro v. M.J. Div of Child Prot. & Permanency,*
*814 F.3d 164, 169 (3rd Cir 2016)*…………………………………………………………………20

*McTernan v. City of York, 577 F.3d 521, 530, (3d Cir. 2009)*……………………7, 21, 23

*Michigan v. Chesternut, 486 U.S. 567, 572-76, 108 S.Ct. 1975 (1988)*…………………10

*Miller v. City of Phila., 174 F.3d 368, 374 (3d Cir. 1999)*…………………………………11

*Monell v. Dep't of Soc. Servs. of N.Y.,*
*436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)*……………………………..21

*Newport v. Fact Concerts, 453 U.S. 247 (1981)*……………………………………………..24

*Oshiver v. Levin, Fishbein Sedran & Berman,*
*38 F. 3d 1380, 1384 n. 2 (3d Cir. 1994)*…………………………………………………………4

*Palma v. Atlantic County, 53 F. Supp. 2d 743, 754 (D.N.J. 1999)*………………………26

*Pearson v. Callahan, 555 U.S. 223, 236, 129 S.Ct. 808 (2009)*…………………………10

*Phillips v. Co. of Allegheny, 515 F. 3d 224, 234-35 (3d Cir. 2008)*………………………7

*Plumhoff v. Rickard, 134 S.Ct. 212 (2014)* ………………………………………………14, 18

*Reisinger v. Luzerne County, 712 F. Supp. 2d 332, 343-344 (M.D. Pa. 2010)*………….6

*Richle v. Howards,*
*566 U.S. 658, 664, 132 S.Ct. 2088, 182 L.Ed 2d 985 (2012)*………………………..……19

*Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010)*………………………..22

*Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 1251 (2001)* …………………………………10

*Scott v. Harris, 550 U.S. 372, 376, 127 S.Ct. 1769, (2007)*……………………9, 14, 17-19

*Taylor v. Barkes,*
*135 S.Ct. 2042, 2044, 192 L.Ed 2d 78 (2015).  Id 905 F.3d at 719*……………………20

*United States v. Place,*
462 U.S. 696, 703, 103 S. Ct. 2637, 77 L. Ed. 2d 110 (1983) …………………………17

*White v. Pauly, 137 S.Ct. 548, 196 L.Ed 2d 463 (2017)*……………………………… 20

*Wilson v. Layne, 526 U.S. 603, 617, 119 S.Ct. 1692, 143 L.Ed 2d 818 (1999)* ……...20

*Wood v. Williams*, 568 F. App'x 100, 105 (3rd Cir. 2014)………………………………22

Wright and Miller, Federal Practice and Procedure:2D § 1357 …………………………4

## **RULES AND STATUTES**

*Fed. R.Civ.P. 12(b)(6)*………………………………………………………………… *6*

*42 U.S.C. § 1983* …………………………………………………. *13, 16, 17, 21*

*75 P.S. 3733 (a)*………………………………………………………………. *3,4*

*75 P.S. 3802(d)(3)*……………………………………………………………… *4*

I.     **FACTUAL AND PROCEDURAL HISTORY**

A.     **OVERVIEW**

Plaintiff commenced this action by filing a Complaint with this Honorable Court on or about June 9, 2020.  See Doc. 2.  After some initial proceedings, not relevant to the instant motion, Plaintiff was permitted to file an Amended Complaint. In his Amended Complaint, Plaintiff attempts to assert claims against East Lampeter Township ("Township") and one of its officers , Officer Ryan Wiegand ("Wiegand"), for violations of his civil rights pursuant to 42 U.S.C. § 1983 that occurred during the course of a Police pursuit and subsequent arrest.   When referred to collectively, these Defendants are identified as ("Moving Defendants"). Plaintiff's claim against the Township is based upon an alleged failure to train Wiegand that he claims led to a violation of his civil rights.

Plaintiff also claims he was beaten after handcuffs were applied in support of his claim that he was subjected to excessive force. Defendants strenuously deny this assertion and further deny that Plaintiff was subjected to Excessive Force. However, at this early stage of the proceeding, based upon the facts pled, Defendants do not seek dismissal of this claim at this time. With respect to the other claims asserted against Officer Wiegand, Moving Defendants assert that Plaintiff's claims arising from the police pursuit should be analyzed under the Fourteenth Amendment due process clause. Under this standard, the Supreme Court has held that an intent to harm or worsen the Plaintiff's condition is required in order to state a claim. Plaintiff has failed to state any facts that would support such a claim and, accordingly, this claim must fail as a matter of law. Defendants are aware that some courts have applied a Fourth Amendment analysis to a police pursuit case. Defendants assert that the same result should attain to

Plaintiff's pursuit claims regardless of the constitutional analysis applied. Finally, Officer Wiegand asserts that the law was not so clearly established as to place him upon notice that his conduct during the pursuit would violate the constitution.

The Township asserts that Plaintiff's claim against it is insufficient as a matter of law. Additionally, Moving Defendants seek an Order dismissing Plaintiff's claims asserted under the Eighth Amendment as this Amendment is reserved for cruel and unusual punishment that takes place after an individual has received process. As no such allegation is made in Plaintiff's Amended Complaint, this claim must fail as a matter of law. Finally, Plaintiff has attempted to assert a punitive damage claim against Defendant East Lampeter Township. The Township asserts that such claims are not allowed as a matter of law.

### B.    FACTS PLED IN COMPLAINT

Plaintiff originally commenced this action via Complaint filed on June 9, 2020. *Doc. 2.* After a period of suspension, Plaintiff was permitted to reinstitute his claim via Amended Complaint filed with this Honorable Court on or about March 29, 2021. *See Doc. 40.* In his Amended Complaint, Plaintiff correctly observes that Officer Wiegand was, at all times relevant hereto, a police officer for the Township. *See Doc. 40 at Paragraph 1.* Plaintiff also correctly observes that East Lampeter Township is a municipality in the Commonwealth of Pennsylvania. *See Doc. 40, Paragraph 8.* Plaintiff alleges that on December 2, 2019, he was operating a motor vehicle at approximately 11:55 p.m. in Lancaster, Pennsylvania. *Id. at Paragraph 1.* Plaintiff alleges that he was followed by a vehicle operated by Officer Wiegand. Id. Plaintiff alleges that Officer Wiegand drove "in an aggressive manner." *Id. at Paragraph 12.*

Before commencing the pursuit, Plaintiff candidly concedes that Office Wiegand's vehicle activated its flashing lights. *Id. at Paragraph 8*. Nevertheless, Plaintiff concedes that he failed and refused to stop his vehicle despite the flashing lights. *Id. at Paragraphs 9-29.*

Plaintiff concedes that he continued to refuse to pull his vehicle over pursuant to a lawful stop for ***over 15 minutes***. *Id. at Paragraph 19.* Plaintiff also concedes that he continued to flee even after his tires were "shredded" by "spike strips" that were laid down in his path by the state police. *Id. at Paragraph 20.* Furthermore, Plaintiff admits that even after his vehicle was disabled by a driving maneuver performed by the state police, he ***continued to flee on foot*** from officers that he pleads were acting under color of state law. *Id. at Paragraphs 28 – 29.* Notably, Plaintiff does not allege that the vehicle operated by Defendant Wiegand ever came in contact with his vehicle. Despite the foregoing, Plaintiff blames Defendants for the pursuit and any allegedly consequent injuries.[1]

Plaintiff concedes that he resisted arrest. *Doc. 40 at Paragraph 32*. Moreover, the criminal pleadings arising from the instant pursuit, which are matters of public record and over which this Honorable Court can take judicial notice in the context of a Motion to Dismiss, reflect that Plaintiff pled guilty to multiple violations of the criminal code, including fleeing or attempting to allude police officer pursuant to 75 P.S. 3733 (a). A

---

[1] The "facts" set forth in this section are taken from Plaintiff's Complaint and are accepted as true for purposes of this Motion. Many of these facts are disputed.

true and correct copy of Plaintiff's relevant criminal history is attached to Defendants'

Motion (document 43) as Exhibit A.[2].

     75 P.S. 3733 (a) provides as follows:

> **(a) Offense defined.--** Any driver of a motor vehicle who willfully fails or refuses to bring his vehicle to a stop, or who otherwise flees or attempts to elude a pursuing police officer, when given a visual and audible signal to bring the vehicle to a stop, commits an offense as graded in subsection (a.2)

Fleeing or attempting to allude a police officer when committed under the influence of a

controlled substance, and/or when a law enforcement officer is endangered by the

nature of the pursuit, is a third-degree felony. Plaintiff pled guilty to recklessly

endangering another person and to driving under the influence in violation of 75 P.S.

3802(d)(3).  Id. These guilty pleas are not only matters of public record over which this

Honorable Court may take judicial notice, but also conclusively establish that Plaintiff's

conduct was willful and reckless. Plaintiff concedes that he is currently serving jail time

in the Chester County Prison for his crimes "in relation to this matter." *Id. at Paragraph*

*46.*

     Against the foregoing factual and procedural backdrop, Plaintiff alleges that his

Fourteenth Amendment due process rights and his rights under the Eighth Amendment

were violated by Officer Wiegand's conduct.  Additionally, Plaintiff alleges in conclusory

fashion, that the Township failed to adequately train Officer Wiegand.  Because moving

Defendants have compared the allegations pled in Plaintiff's Amended Complaint to the

applicable law and found several of Plaintiff's claims to be fatally flawed, they have

---

[2]. Although the focus of a motion to dismiss is upon the allegation set forth in the pleadings, matters of public record orders and exhibits attached to the complaint may also be considered. *See*, *Oshiver v. Levin, Fishbein Sedran & Berman*, 38 F. 3d 1380, 1384 n. 2 (3d Cir. 1994) (citing Wright and Miller, Federal Practice and Procedure:2D § 1357; *Chester County Intermediate Unit v. Pennsylvania Blue Shield*, 896 F. 2d 808, 812 (3d Cir. 1990).

timely filed a partial motion to dismiss Plaintiff's claims based upon the Fourteenth and Eighth Amendments and have further moved to dismiss all of Plaintiff's claims against East Lampeter Township. This Brief is offered in support of that Motion.

II.   **STATEMENT OF QUESTIONS PRESENTED**

  A.   **WHETHER PLAINTIFF HAS FAILED TO STATE A FOURTEENTH AMENDMENT CLAIM UPON WHICH RELIEF CAN BE GRANTED BECAUSE PLAINTIFF  ENGAGED IN WILLFUL FLIGHT FROM AUTHORITES AND HAS PLED GUILTY TO RECKLESS ENDANGERMENT AND DUI ARISING FROM HIS CONDUCT  DURING THE PURSUIT?**

   *(Answered in the affirmative.)*

   1.  *Whether* Plaintiff's Claims Are Properly Analyzed Under the <u>Fourteenth Amendment</u>?

   *(Answered in the affirmative.)*

   2.  *Whether Plaintiff's Failure to Plead facts to support an Intent to Harm is Fatal to the Substantive Due Process Claim Contained in Count I of the Complaint Given the <u>Rapidly Evolving Nature of the Pursuit</u> ?*

   *(Answered in the affirmative.)*

   3.   *Whether Plaintiff's Claims Arising from the Pursuit Should Fail if Analyzed Under the Fourth Amendment <u>Reasonableness Standard?</u>*

   *(Answered in the affirmative.)*

  B.   **WHETHER THE LAW PERTAINING TO POLICE PURSUITS WAS NOT SO CLEARLY ESTABLISHED SO AS TO DEPRIVE THE INDIVIDUAL OFFICERS OF QUALIFIED IMMUNITY AS A MATTER OF LAW?**

   *(Answered in the affirmative.)*

  C.   **WHETHER PLAINTIFF'S CLAIMS AGAINST EAST LAMPETER TOWNSHIP MUST FAIL AS A MATTER OF LAW?**

   *(Answered in the Affirmative.)*

D.   **WHETHER PLAINTIFF'S CLAIMS ASSERTED UNDER THE EIGHTH AMENDMENT FAIL TO STATE A CLAIM AS A MATTER OF LAW?**

*(Answered in the Affirmative.)*

II.   **ARGUMENT**

A.   **PLAINTIFF HAS FAILED TO STATE A SUBSTANTIVE DUE PROCESS CLAIM UPON WHICH RELIEF CAN BE GRANTED BECAUSE PLAINTIFF ENGAGED IN WILLFUL FLIGHT FROM AUTHORITES AND HAS PLED GUILTY TO RECKLESS ENDANGERMENT AND DUI ARISING FROM HIS CONDUCT DURING THE PURSUIT.**

**Standard of Review**

A motion to dismiss pursuant to the Federal Rules of Civil Procedure addresses the legal sufficiency of the Complaint.  In *Reisinger v. Luzerne County*, 712 F. Supp. 2d 332, 343-344 (M.D. Pa. 2010), this Honorable Court restated the appropriate standard of review for assessing a motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6). Specifically, the *Reisinger* court acknowledged the analysis established by the United States Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 433 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009).  In accordance with the Supreme Court precedent, in order "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim that relief is plausible on its face'." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 570).  In *Twombly*, the court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Id.* at 1950.

Moreover, the *Twombly* court noted that "[d]etermining whether a complaint states a plausible claim for relief … will be a context-specific task that requires the reviewing court to draw upon its judicial experience and common sense." *Id.* (citations

6

omitted).   In *McTernan v. City of York*, 577 F.3d 521, 530, (3d Cir. 2009), the Third Circuit noted that it has repeatedly discussed the importance of *Twombly* and *Iqbal,* and that these decisions provide a "roadmap" for district courts presented with motions to dismiss for failure to state a claim.   As articulated by the court in *Reisinger*, the roadmap may be properly described as follows:   district courts should conduct a two-part analysis.   First, the factual and legal elements of the claim should be separated.   The district court must accept all of the complaint's well-pled facts as true but may disregard any legal conclusions.   *See Iqbal*, 129 S. Ct. at 1949.   Second, the district court must then determine whether facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."   *Id.* at 1950.   In other words, a complaint must do more than allege a plaintiff's entitlement to relief.   A complaint has to "show" such an entitlement with facts.   *See Phillips v. Co. of Allegheny*, 515 F. 3d 224, 234-35 (3d Cir. 2008).   As the Supreme Court noted in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but has not 'shown' – 'that the pleader is entitled to relief'."   *Iqbal*, 129 S. Ct. at 1949.

This plausibility determination involves a context-specific task that requires the reviewing court to draw upon its judicial experience and common sense.   *Id. Fowler*, 578 F. 3d at 210-11.   Based upon the foregoing, the Third Circuit has made it clear that conclusory allegations are not entitled to the same deference as well-pled facts.   In other words, this Honorable Court is not "bound to accept as true a legal conclusion couched as a factual allegation."   *Guirguis v. Movers Specialty Services, Inc.*, No. 09-1104, 2009 WL 3041992, at p. 2 (3d Cir. Sept. 24, 2009) (quoting *Twombly*, 550

U.S. at 555 (not precedential).)

Against the backdrop of this well-established precedent, Moving Defendants submit that the Eighth and Fourteenth Amendment claims asserted in Plaintiff's Complaint against them should be dismissed with prejudice because Plaintiff has failed to plead facts sufficient to state the high standard associated with claims arising from police pursuits against either Moving Defendant and has failed to state a claim upon which relief can be granted. Alternatively, the state of the law existing at the time of Plaintiff's arrest was not so clearly established so as to place Officer Wiegand on notice that his conduct would violate Plaintiff's constitutional rights. Finally, Defendants assert that Plaintiff has failed to state a claim against East Lampeter Township as a matter of law.

1. **Plaintiff's Claims Are Properly Analyzed Under the Fourteenth Amendment**

As a preliminary matter, Defendants recognize the Plaintiff attempts to assert claims against all of the individually named defendants under both the Fourth and Fourteenth Amendments. *See Doc. 40.* To the extent the Plaintiff asserts that his excessive force claims should be analyzed under the Fourth Amendment, Moving Defendants agree. However, under the facts of this case, the police pursuit claims should be analyzed under the Fourteenth Amendment's substantive due process clause and not upon the Fourth Amendment. As a general rule, a court must discern whether a more particularized amendment applies rather than the generalized notion of due process. *Albright v. Oliver*, 510 U.S. 266, 273 114, S.Ct. 807 (1994) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989). In most contexts, as in the instant case, allegations in a police pursuit case are properly analyzed under the substantive due process clause

because mere pursuit does not involve a "seizure" for purposes of the Fourth Amendment.  See, contra, *Scott v. Harris*, 550 U.S. 372, 376, 127 S.Ct. 1769, (2007) (involving a seizure by police as part of a police vehicle pursuit).  Absent a Fourth Amendment seizure, claims of constitutional derivation arising from police pursuits are analyzed through the lens of the substantive due process clause. *County of Sacramento v. Lewis*, 523 U.S. 833, 845, 118 S.Ct. (1998) (analyzing the claim of an injury to a bystander as part of a police pursuit under the Fourteenth Amendment substantive due process.)

In the instant case, Plaintiff alleges no facts to support a claim that the pursuit at issue involved a seizure committed by Moving Defendants.  Instead, Plaintiff alleges that Officer Wiegand "drove in an aggressive manner." *Doc. 40 at Paragraph 12*. Moving Defendants concede that Plaintiff alleges that he was subjected to spike strips set down in his path by other Defendants. *Id at Paragraphs 20-21*. Further, Plaintiff alleges that another Defendant made contact with his vehicle causing it to spin 180°. *Id at Paragraph 28.* However, no such allegation is made with respect to Officer Wiegand. Just as importantly, none of these efforts resulted in a Fourth Amendment Seizure as Plaintiff candidly concedes that after the vehicular pursuit had terminated, he fled on foot. *Id. at Paragraph 30*. Accordingly, Plaintiff's claims against Officer Wiegand arising from the pursuit are properly analyzed under the Fourteenth Amendment.

As a sister court properly observed in *Carroll v. Borough of State College*, 854 F.Supp. 1184, 1190 (M.D.Pa. 1994), only in cases in which the police took direct action to halt a fleeing vehicle in an abrupt manner do the Fourth Amendment protections come into play.  See also, *California v. Hodari D.,* 499 U.S. 621, 111 S.Ct. 1547 (1991)

(a show of authority by police which is ignored by the fleeing suspect does not constitute a "seizure") and *Michigan v. Chesternut*, 486 U.S. 567, 572-76, 108 S.Ct. 1975 (1988) (police car driving parallel to individual fleeing on foot) does not constitute a "seizure" under the Fourth Amendment. In light of the foregoing, this case should be analyzed under the Fourteenth Amendment due process clause.

As noted above, the individual Defendants assert that Plaintiff has failed to state a due process claim as a matter of law and assert they are entitled to qualified immunity. In cases such as the instant case, the Court has discretion to consider in what order it addresses the issue whether a plaintiff has shown a deprivation of the constitutional right and the issue whether that right is clearly established at the time of the alleged violation.  See *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S.Ct. 808 (2009).  However, in *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 1251 (2001) the Supreme Court utilized the traditional principal of demonstrating whether a constitutional right exists in the first place.  This approach has the advantage of expediency because if the court determines that no constitutional claim has been stated, a defendant's right to qualified immunity will no longer require the court's attention.

> **2.** **Plaintiff's Failure to Plead facts to support an Intent to Harm is Fatal to the Substantive Due Process Claim Contained in Count II of the Complaint Given the Rapidly Evolving Nature of the Pursuit**

Under the Fourteenth Amendment due Process analysis, when a municipal officer is alleged to have engaged in abusive action, "only the most egregious official conduct can be said to be arbitrary in the constitutional sense. *County of Sacramento v. Lewis,* 523 U.S. 833 at 846 (1998).  Without question, liability for negligently inflicted harm is beneath the relevant constitutional threshold.  *Id. at 848.*  To create liability, the

conduct of the individual officers must be "so ill-conceived or malicious that it 'shocks the conscious'". *Miller v. City of Phila.,* 174 F.3d 368, 374 (3d Cir. 1999).

Unquestionably, a seminal case articulating the appropriate analysis for a due process violation brought pursuant to § 1983 is *Lewis*, Supra. In this case, the Supreme Court was confronted with a Section 1983 claim asserted by representatives of the estate of an innocent passenger killed during the course of a police pursuit of a driver for a traffic violation. The <u>Lewis</u> Court was faced with a police pursuit of a driver of a motorcycle. The motorcycle operator was driving at a high rate of speed with a 16-year-old passenger on the back. The pursuing officer activated the patrol car lights and ordered the driver to stop. The officer pulled his patrol car next to a fellow officer's patrol car in order to block the motorcycle's escape. However, the driver of the motorcycle refused to pull over and maneuvered between the two patrol cars commencing a high-speed chase. A fellow officer then switched on emergency lights and siren and began to pursue. The pursuit continued through a residential neighborhood. At times, the motorcycle reached speeds of 100 miles per hour with the patrol car following at a close distance. The pursuit ended when the motorcycle attempted a sharp turn but tipped over and the police officer was unable to stop in time to avoid striking the motorcycle resulting in the death of the passenger.

As in the instant case, the plaintiff in *Lewis* asserted that her substantive due process rights were violated and sued the officers pursuant to Section 1983. In finding in favor of the officers in question, the *Lewis* Court explained that the chase itself was not the fault of the officers. Instead, the Court explained the officer:

> "was faced with a course of lawless behavior for which the police were not
> to blame. They had done nothing to cause [the pursued driver's] high

11

speed driving in the first place, nothing to excuse his flouting of the commonly understood law enforcement authority to control traffic, and nothing (beyond a refusal to call off the chase) to encourage him to race off through traffic at great neck speed forcing other driver's out of their travel lanes.    [The driver's] outrageous behavior was practically instantaneous and so was [the officer's] instinctive response.    While prudence would have repressed the reaction, the officer's instinct was to do his job as a law enforcement officer, not to induce [the pursued driver's] lawlessness, or to terrorize, cause harm or to kill.  Prudence, that is, was subject to counter-veiling enforcement considerations, and while [the officer] exaggerated their demands, there is no reason to believe that they were tainted by an improper or malicious motive on his part."

Id. 523 U.S. at 855

These facts are more extreme than those in the instant case. In the instant case, unlike in Lewis, there is no allegation that any direct injury was foisted upon Plaintiff during the Pursuit. Instead, Plaintiff alleges that he was subjected to excessive force after he fled on foot requiring multiple efforts to bring him into custody including use of a taser. *Id at Paragraph 30.* Indeed, Plaintiff expressly denies that he was injured as a function of the Pursuit when he claims that "medical records were falsified under heavy police influence to make the Plaintiff's injuries look like they were caused by a motor vehicle accident." *Id. at Paragraph 45.*

The *Lewis* Court made it clear that the level of conduct required to show a violation of the innocent passenger's substantive due process rights was **beyond recklessness or even deliberate indifference** to the life of the passenger and **required a showing of a purposeful intent to harm** unrelated to the legitimate object of arrest which it found was not met in that case.  *523 U.S. at 836.*

In the ensuing years, the Third Circuit has had opportunities to interpret *Lewis*. For example, in *Davis v. Township of Hillside*, 190 F.3d 167, (3d Cir. 1999), the Court of Appeals applied *Lewis* and applied a substantive due process analysis to a case

12

involving physical contact between the police vehicle and the plaintiff's vehicle in order to secure custody of the plaintiff. After reviewing *Lewis,* the *Davis* Court upheld the denial of a substantive due process claim brought by an innocent bystander injured during a police vehicular pursuit.

Once again, in a case involving facts even more unfortunate than those in this instance as the injured party was an innocent bystander, the vehicular pursuit in *Davis* occurred when a police officer attempted to pull over the driver of a vehicle.  *Id. 190 F.3d at 169.* As in the instant case, the driver refused to stop resulting in pursuit. Furthermore, as in the instant case, the police officer in *Davis* ended the pursuit utilizing a "bump procedure" similar to that alleged by Plaintiff here, that involved intentionally hitting the rear of the driver's vehicle with his police cruiser.  This maneuver caused the driver to hit his head on the steering wheel, pass out, which in turn caused the driver's vehicle to spin out of control striking two other vehicles, one of which hit the plaintiff.  Id. Applying the *Lewis* decision to the facts before it, the Third Circuit found in favor of the officers as follows:

> "***there is no evidence that their actions were tainted by an improper or malicious motive.***

Id. at 171 (emphasis added.)

Notably, a cornerstone of Plaintiff's Amended Complaint appears to be that the pursuit should not have been undertaken in the first place or that, once begun, it should have been discontinued allowing Plaintiff to go free.  Plaintiff claims that had the police stopped their pursuit, the injury that brings about the Section 1983 case could have been prevented.  However, the Supreme Court has, on multiple occasions, held the decision that is the cause of the risk to the driver himself and innocent bystanders is not

13

the decision to pursue made by law enforcement, but the decision made by the fleeing suspect himself intentionally placing himself and others in danger by unlawfully engaging in reckless flight.   See *Lewis* 528 U.S. at 855, *Scott*, 550 U.S. at 384, *Plumhoff v. Rickard*, 134 S.Ct. 212 (2014) (Applying a Fourth Amendment analysis to officers who shot into a fleeing vehicle to prevent further threat to innocent bystanders).

In *Scott*, Supra, the Supreme Court squarely rejected the notion that the officer should be held to account for injuries that befell a chase that could easily have been prevented by simple submission to police authority as follows:

> "[B]ut wait, says respondent:  couldn't the innocent public equally have been protected, and the tragic accident entirely avoided, if the police had simply ceased their pursuit?
>
> \*          \*          \*
>
> First of all, there would have been no way to convey convincingly to respondent that the chase was off and he was free to go.  Had respondent looked in his rear-view mirror and seen the police cars deactivate their flashing lights and turn around, he would have no idea whether they were truly letting him get away, or simply devising a new strategy for capture.  Perhaps the police knew a shortcut he didn't know, and would reappear down the road to intercept; or perhaps they were setting up a roadblock in his path.  Given such uncertainty, respondent might have been just as likely to respond by continuing to drive recklessly as by slowing down and wiping his brow."

Id. 550 U.S. F. 385.

Along these same lines, the Supreme Court in *Scott* indicated that it was "loathe to lay down a rule requiring police to allow fleeing suspects to get away whenever they drive so recklessly that they put other people's lives in danger."  Id.  The Supreme Court held that such a rule would create "perverse incentives encouraging fleeing motorists to accelerate to 90 miles per hour or more to ensure an escape from authority.  The Supreme Court concluded that the constitution never extended such an "invitation to

impunity-earned by recklessness." *Id. 550 U.S. 385-386.* As noted above, Plaintiff has pled guilty to fleeing and eluding police pursuit. *See Exhibit A.* Accordingly, Plaintiff should not be heard to complain that his own conceded reckless flight and the reckless driving that was concomitant thereto was the fault of anyone but himself.

Defendants acknowledge that Plaintiff, like the plaintiff in *Lewis,* relies upon East Lampeter Departmental policy or the lack thereof in support of his claims. *Doc. 40 Claims for Relief at Paragraph 4.* In so doing, Plaintiff seeks to elevate departmental policy and state law with respect to driving of emergency vehicles to a federal constitutional standard. However, both the Supreme Court in *Lewis* and the Third Circuit in *Davis* were categorically unconvinced by such an argument. Both *Lewis* and *Davis* involved alleged violations of police policies and procedures. Both decisions found such allegations to be insufficient to meet the federal constitutional standard for a substantive due process claim.

In *Davis,* the Court of Appeals relied upon *Lewis* when it explained why reliance upon departmental policy to establish unconstitutional conduct on the part of the defendant officers was unavailing to the plaintiff. Specifically, the *Davis* Court observed that in *Lewis*, the court of appeals had reversed summary judgment for the defendant officer, finding a triable issue of fact because he had apparently disregarded the Sacramento County Sheriff's Department's General Order on police pursuits.   The Supreme Court reversed, holding that high-speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment. According to the Third Circuit in Davis, *Lewis* squarely refuted the plaintiff's contention that an officers' violation of police department regulations,

which might be probative of recklessness or conscious disregard of plaintiff's safety, suffices to meet the shocks-the-conscience test under the due process clause. Id. 190 F.3d at 170 (internal quotations and citations omitted).

In *Lewis* the Court stated: "[r]egardless of whether [the defendant's] behavior offended the reasonableness held up by tort law or the balance struck in law enforcement's own codes of sound practice, it does not shock the conscience, and petitioners are not called upon to answer for it under § 1983." *523 U.S. at 855*. Thus, to the extent that Plaintiff's due process arguments are based upon alleged or perceived violations of Lewistown Departmental policies or procedures, these claims must fail as a matter of law. Id.

Based upon the foregoing, Defendants respectfully submit that Plaintiff's pursuit claims should be analyzed under the Fourteenth Amendment Due Process standard and that under this standard, Plaintiff has failed to state a claim for a substantive due process violation upon which relief can be granted.  Certainly, no facts pled in the Complaint are sufficient to satisfy the rigid standards set forth by the Supreme Court for the analysis of a substantive Due Process claim in the context of a police pursuit. This analysis assures that only circumstances in which a plaintiff can plausibly contend that the officers purpose was to cause harm unrelated to the legitimate object of arrest is there a sufficient conduct necessary to "shock the conscience" that is the necessary prerequisite to a substantive due process claim.  See *Lewis*, 523 U.S. at 836.

Accordingly, it is respectfully submitted that Plaintiff has failed to state a claim against the individual officers and Count II of Plaintiff's Complaint should be dismissed with prejudice as a matter of law.

16

### 3. Plaintiff's Claims Arising from the Pursuit Should Fail if Analyzed Under the Fourth Amendment Reasonableness Standard.

Even if this Honorable Court applies a Fourth Amendment analysis, Plaintiff has failed to state a claim upon which relief can be granted arising from the Police Pursuit. In *Scott v. Harris*, 550 U.S. 372, 376, 127 S. Ct. 1769, (2007), the Supreme Court applied a Fourth Amendment analysis to a Police Pursuit. In *Scott*, the police officer terminated a high-speed pursuit of respondent's car by applying his push bumper to the rear of the vehicle, causing it to leave the road and crash. Respondent was rendered quadriplegic. He filed suit under 42 U.S.C. § 1983 alleging, *inter alia*, the use of excessive force resulting in an unreasonable seizure under the Fourth Amendment. In determining the reasonableness of the manner in which the seizure was effected, the *Scott* Court observed that it "must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *United States* v. *Place*, 462 U.S. 696, 703, 103 S. Ct. 2637, 77 L. Ed. 2d 110 (1983).

The *Scott* Court observed that the governmental interest in ensuring public safety was of paramount importance. As in the instant case, nowhere does Plaintiff plead facts to support an alternate conclusion. Thus, in judging whether Defendant Wiegand's actions were reasonable, This Honorable Court must "consider the risk of bodily harm that [Wiegand's] actions posed to [Shields] in light of the threat to the public that [Wiegand] was trying to eliminate." *Id 550 U.S. at 383.* As in *Scott*, there is no obvious way to quantify the risks on either side. However, it is clear from the allegations of Plaintiff's Complaint, neither lights nor multiple Police Cruisers, nor "spike strips" were

17

sufficient to bring Plaintiff into compliance with a lawful order to pull over. Accordingly, like the motorist in *Scott,* Plaintiff's reckless decision to engage in a high-speed extended chase with, by his own admission, impaired breaks while he himself was impaired constituted an "imminent threat to the lives of any pedestrians who might have been present, to other civilian motorists, and to the officers involved in the chase." Id.

Moving Defendants respectfully submit that unlike *Scott,* none of Officer Wiegand's actions, even if Plaintiff's allegation that he was "driving aggressively" is given credit as an allegation of fact, posed a high likelihood of serious injury or death to Plaintiff. Certainly, nothing Officer Wiegand is alleged to have done during the course of the Pursuit presented anywhere near the certainty of death or serious injury posed by, "say, shooting a fleeing felon in the back of the head, See *Garner,* Supra at 4, 105 S. Ct. at 6094, or shooting the motorist as it attempted to escape. See *Plumhoff v. Rickard*, 134 S.Ct. 212 (2014). *Scott*, 550 U.S. at 384.

Thus, as suggested by the *Scott* Court, in determining the reasonableness of Officer Wiegand's alleged conduct, this Honorable Court must weigh:

> the perhaps lesser probability of injuring or killing numerous bystanders against the perhaps larger probability of injuring or killing a single person" We think it appropriate in this process to take into account not only the number of lives at risk, but also their relative culpability. It was respondent, after all, who intentionally placed himself and the public in danger by unlawfully engaging in the reckless high-speed flight that ultimately produced the choice between the two evils that [Weigand] confronted. Multiple police cars with blue lights flashing and sirens blaring had been chasing respondent for nearly 10 miles but he ignored their warning to stop. By contrast, those who might have been harmed had [Weigand] not taken the action he did were entirely innocent. We have little difficulty in concluding it was reasonable for [Weigand] to take the action he did.

*Scott*, 550 U.S. at 384.

The facts pled in Plaintiff's Complaint demonstrate that the decision to pursue was immediate and visceral.  It was a decision that needed to be made in a matter of seconds, not hours or minutes.  Moreover, as noted above, should this Honorable Court's analysis focus upon the decision to break-off the pursuit, the Supreme Court has given clear guidance as to which party bears the responsibility for that decision and leaves it squarely in the hands of the fleeing party who has willfully ignored the officer's exercise of constitutionally fundamental police powers. *Scott*, 550 U.S. 385-386. Notable in this regard, Plaintiff concedes that the officers had lights activated at all times relevant hereto.  *See Doc 40 at Paragraph 8.*

Finally, as noted by the Third Circuit in *Davis*, "Nothing in *Lewis* suggests that courts are free to second-guess a police officer's decision to initiate pursuit of a suspect so long as the officers were acting "in the service of a legitimate governmental objective," Id. 190 F. 3rd at 167 citing *Lewis,* 118 S.Ct. at 1716, Thus, it is respectfully submitted that even under a Fourth Amendment analysis, Plaintiff has failed to state a claim upon which relief can be granted.

> **B.    The Law Pertaining to Police Officer Culpability for Police Pursuits was Not So Clearly Established so as to Deprive Individual Officers of Qualified Immunity as a Matter of Law.**

Even if this Honorable Court is unpersuaded that Plaintiff has failed to state a substantive due process claim as a matter of law, the officer Defendants are entitled to qualified immunity.  According to our Third Circuit, a right is clearly established in limited circumstances as follows:

> A right is clearly established when the law is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Richle v. Howards*, 566 U.S. 658, 664, 132 S.Ct. 2088, 182 L.Ed 2d 985 (2012)…  That does not require a prior precedent with

19

indistinguishable facts, "but existing precedent must have placed a statutory or constitutional question beyond debate. *Ashcroft v. Al-Kidd*, 563 U.S. 731, 741, 131 S.Ct. 2074, 179 L.Ed 2d 1149 (2011). ***Existing precedent is sufficient to place a constitution question beyond debate and to defeat qualified immunity only if it is "controlling authority in [the relevant] jurisdiction," Wilson v. Layne, 526 U.S. 603, 617, 119 S.Ct. 1692, 143 L.Ed 2d 818 (1999) or if "a robust consensus of cases of persuasive authority" in the court of appeals" has settled the question. Mammaro v. M.J. Div of Child Prot. & Permanency, 814 F.3d 164, 169 (3rd Cir 2016) (quoting Taylor v. Barkes, 135 S.Ct. 2042, 2044, 192 L.Ed 2d 78 (2015). Id 905 F.3d at 719.***

The Third Circuit cautioned that when courts fail to take into consideration, particularized facts of a case, they permit plaintiff's "to convert the rule of qualified immunity… into a rule of virtually unqualified liability simply by alleging a violation of extremely abstract rights. Id. (citing *White v. Pauly*, 137 S.Ct. 548, 196 L. Ed 2d 463 (2017). Stated plainly, the Third Circuit has clearly announced that officers are subject to liability for conduct proscribed by established law only when **both** the theory of liability **and** its application to the established facts are sufficiently plain that the legal question of liability is "beyond legitimate debate" can plaintiff defeat a qualified immunity defense. *Kendra v. Schroeter*, 876 F.3d 424, 432, 448 (3rd Cir 2017).

The Third Circuit has acknowledged that both the Eighth and Ninth Circuits embrace the "intent to harm standard" for all police pursuit cases regardless of whether an emergency existed at the time of the pursuit. In light of the foregoing, Officer Wiegand respectfully submits that the pursuit in question involved precisely the kind of split-second decision-making in pursuit of a "paramount" governmental interest. Accordingly, Officer Weigand is entitled to qualified immunity as a matter of law and requests that this Honorable Court enter an Order dismissing Plaintiff's Fourth and/or Fourteenth Amendment claims arising from the pursuit because Plaintiff has failed to

plead any fact that would place officer Wiegand upon notice that his conduct during the course of the pursuit placed Plaintiff's constitutional rights in jeopardy.

### C. PLAINTIFF'S CLAIMS AGAINST EAST LAMPETER TOWNSHIP MUST FALIL AS A MATTER OF LAW

Plaintiff purports to state a claim in his Amended Complaint that East Lampeter Township violated his constitutional rights as follows:

> The actions of Defendant East Lampeter Township acquiesced in their Police Officer's misconduct by failing to adequately train police officer Ryan Wiegand as to lawful use of force policies, vehicular pursue policies and arrest procedure."

*Doc 40 at "Claims for Relief" at Paragraph 4.* The only other Paragraph in Plaintiff's Amended Complaint referencing East Lampeter Township is found in Paragraph 8, wherein Plaintiff alleges that the Township is a "municipality whose responsibility is to provide adequate training and valid certifications for their police officers." Id.

As with all of Plaintiff's claims, Plaintiff's municipal and supervisory claims "require a showing, rather than a blanket assertion, of entitlement to relief that rises above the speculative level." *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009) (internal quotation marks omitted). To evaluate whether a plaintiff has met this standard, the Third Circuit has provided guidance, consistent with the Rule 8 pleading standard, as follows:

> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (citations, footnote, and internal quotation marks omitted). The court must "also disregard 'naked assertions devoid of further factual enhancement 'and 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" Id. at 131. (Quoting *Iqbal* 556 U.S. At 678).

A municipality may not be held liable under section 1983 based solely on the conduct of its employees. See *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Instead, "[w]hen a suit against a municipality is based on § 1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation, or decision officially adopted by the governing body or informally adopted by custom." *McTernan*, 564 F.3d at 657 (alteration in original) (internal quotation marks omitted). "To satisfy the pleading standard, [a plaintiff] must identify a custom or policy, and specify what exactly that custom or policy was." *Id. at 658.* If a plaintiff alleges that he or she was harmed by a custom, as opposed to a formally enacted policy, "[c]ustom requires proof of knowledge and acquiescence by the decisionmaker." Id. Where a complaint lacks alleged "facts showing any particular or specific policy or custom, or how it allowed the claimed constitutional violation to occur, identifying the policymaker or decisionmaker, or showing prior notice through a pattern of similar constitutional violations" the complaint is inadequate to state a municipal liability claim. *Wood v. Williams*, 568 F. App'x 100, 105 (3rd Cir. 2014).

Here, Plaintiff's Amended Complaint contains no factual reference to any conduct on the part of East Lampeter Township much less to the existence of a specific formal

policy. Similarly, nothing in Plaintiff's Amended Complaint states "exactly what that custom or policy was." *McTernan*, 564 F.3d at 658.   Similarly, Plaintiff's Amended Complaint contains no factual reference to any causal connection between any specific Policy and Plaintiff's alleged constitutional harm.

Local governments are responsible only for "their own illegal acts," and "are not vicariously liable . . . for their employees' actions." *Connick V. Thompson*, 563 U.S. 51, 131 S. Ct. 1350, 179 L. Ed. 2d 417 (2011). A municipality's culpability for a deprivation of rights is at its most tenuous when a claim turns on a failure to train." *Id.* Where, as here, Plaintiff seeks to impose liability against East Lampeter Township based on its failure to train, "liability under Section 1983 requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come in contact." *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989)).

The "deliberate indifference" standard is "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Brown*, 520 U.S. at 410. Ordinarily, this requires a plaintiff to show "[a] pattern of similar constitutional violations by untrained employees." *Connick*, 563 U.S. at 62. Indeed, in *Connick*, the Supreme Court announced the importance of proof of actual prior notice of the violations before a municipality can be established on the basis of a custom as follows:

> [A] [p]olicymaker's *continued adherence* to an approach that they know or should know failed to prevent tortious conduct by employees may establish the conscious disregard for the consequence of their actions—the deliberate

23

> indifference—triggering municipal liability. Without notice that a course of training is deficient in a particular respect, decision makers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.

*Id.* (Emphasis in original).

Examination of Plaintiff's Amended Complaint reveals that Plaintiff has done nothing to plead facts sufficient to establish liability on the part of East Lampeter Township. Plaintiff has failed to plead any facts to support a pattern of similar constitutional violations that could arguably place Lewisburg on notice of a practice that was giving rise to constitutional injuries. Similarly, nothing in Plaintiff's Amended Complaint demonstrates proof of knowledge and acquiescence by the policymaker of a custom that occurs with sufficient frequency to have the force of law. On the contrary, Plaintiff barely mentions East Lampeter Township and certainly fails to allege any facts sufficient to establish liability thereon. The cases cited above unequivocally establish that such allegations fail to state a claim for Monell liability. Accordingly, Plaintiff's claims against East Lampeter Township must fail as a matter of law. The absence of any viable claim against the Township precludes any claim for punitive damages. However, Plaintiff's claim for punitive damages against the Township fails for the independent reason that such claims are not available against municipal entities. *Newport v. Fact Concerts*, 453 U.S. 247 (1981).

### D. PLAINTIFF'S CLAIMS ASSERTED UNDER THE EIGHTH AMENDMENT FAIL TO STATE A CLAIM AS A MATTER OF LAW

The Eight Amendment provides that "[e]excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted." U.S. Const.

amend. VIII. In his Amended Complaint, Plaintiff includes an unspecified claim that his Eighth Amendment rights were violated. However, nothing in Plaintiff's Amended Complaint even remotely addresses the issue of excessive bail or fines imposed. Accordingly, provision of the Eighth Amendment with even a pretense of applicable of the two Plaintiff's claims is the prohibition against "cruel and unusual punishment." However, given the few factually supported specific claims raised by Plaintiff in his Amended Complaint, Moving Defendants must read Plaintiff's Amended Complaint to mean that he is challenging the police pursuit and the excessive force to which he was allegedly subjected, under the Eighth Amendment. As discussed below, Plaintiff's reliance upon the Eighth Amendment for constitutional redress of the harms allegedly inflicted upon him is misplaced.

The Cruel and Unusual Punishment Clause of the Eighth Amendment "was designed to protect those convicted of crimes," *Ingraham v. Wright*, 430 U.S. 651, 664, 97 S. Ct. 1401, 51 L. Ed. 2d 711 (1977), and, thus, its protections apply "only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions." *Id.* at 671 n.40. Accordingly, to the extent that Plaintiff's Eighth Amendment Claim is intended to protest the police pursuit that is the subject of his Amended Complaint or the excessive force to which he alleges he was subjected during the course of his arrest, he has employed the wrong constitutional theory and has failed to state a claim that implicates any Eighth Amendment interests. *See City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244, 103 S. Ct. 2979, 77 L. Ed. 2d 605 (1983)("[T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt.")

(alteration in the original). Allegations of unconstitutional actions that occurred at or before the time of trial are insufficient to state an actionable Eighth Amendment violation. *See Palma v. Atlantic County*, 53 F. Supp. 2d 743, 754 (D.N.J. 1999) ("[T]o the extent that [plaintiff] seeks to allege a §1983 claim arising out of Defendants' actions prior to his conviction, [plaintiff] fails to state a cognizable claim under the Eighth Amendment"). In view of the foregoing, Plaintiff's Eighth Amendment claims must fail as a matter of law.

## IV.   CONCLUSION

In light of the arguments and authorities cited above, Moving Defendants respectfully request that this Honorable Court enter an Order dismissing all Fourth and Fourteenth Amendment claims arising from the police pursuit for failure to state a claim upon which relief can be granted. Furthermore, Moving Defendants seek an Order dismissing all Plaintiff's claims against East Lampeter Township for failure to state a claim upon which relief can be granted. Finally, Defendant seeking Order of Court dismissing Plaintiff's claims under the Eighth Amendment for failure to state a claim upon which relief can be granted. It is respectfully submitted that in light of the allegations contained in Plaintiff's Amended Complaint, that all dismissals be with prejudice.

MARGOLIS EDELSTEIN

Date:  April 12, 2021          By:   _____
                                          ROLF E. KROLL
                                          Attorney I.D. No. 47243
                                          3510 Trindle Road
                                          Camp Hill, PA  17011
                                          PHONE: 717-760-7502
                                          EMAIL: rkroll@margolisedelstein.com
                                          *Counsel for Defendants*

26

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 12th day of April 2021, a copy of the foregoing document was served upon the following via ECF Notification and first-class mail:

Solishum Sumer Shields
#75319
Chester County Prison
501 S. Wawaset Road
West Chester, PA  19382
*(Pro Se Plaintiff)*

MARGOLIS EDELSTEIN

By: _____
Angela M. Gayman, CRP
Legal Assistant

27