IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SOLISHUM SUMÉR SHIELDS,<br><br>   *Plaintiff,*<br><br>v.<br><br>RYAN WIEGAND, *et al.*,<br><br>   *Defendants.* | CIVIL ACTION<br>NO. 20-2999 |

**PAPPERT, J.**                                    April 14, 2023

<u>**MEMORANDUM**</u>

   This case has been complicated by dozens of unnecessary filings. While some have merit, most are duplicative, contradictory, confusing or a combination of the three. *See, e.g.,* (ECF 135–209).

   Shields's Amended Complaint alleges violations arising from a police pursuit and subsequent arrest. (ECF 40.) On April 12, 2021, Officer Ryan Wiegand and East Lampeter Township moved to dismiss Plaintiff's Eight Amendment claim against Wiegand, his Fourth and Fourteenth Amendment claims against Wiegand as they pertain to the pursuit, and all claims against East Lampeter. (ECF 43). After granting Shields a series of extensions and placing the case in suspense while referring it to the Prisoner Civil Rights Panel (ECF 19, 69), Judge Jones granted the Partial Motion to Dismiss on September 29, 2022.[1] (ECF 133.) In response, Shields filed a Motion to Amend Judgment on October 17 (ECF 135), and three days later filed an identical

---

[1]   All claims against East Lampeter were dismissed; only the excessive force, Fourth and Fourteenth Amendment claims relating to the arrest remain against Officer Wiegand.

1

motion and two notices of appeal.[2]  (ECF 136, 137, 141.)  The case was reassigned to this Court on November 3, 2022.  (ECF 146).

I

Shields's Motion to Amend Judgment was filed under Fed. R. Civ. P. 59(e).  (Mot. Reconsider 1.)  Rule 59(e) governs motions to "alter or amend a judgment," where judgment is defined as "a decree and any order from which an appeal lies."  Fed. R. Civ. P. 59(e), 54(a).  Because the September 29 Order is interlocutory, the Court interprets Shields's motion as one for reconsideration under Local Rule 7.1(g).[3]  E.D. Pa. Loc. R. Civ. P. 7.1(g).  Construed this way, Shields's motion is technically untimely, but the Court departs from Rule 7.1(g)'s fourteen day filing deadline and considers it on the merits because it is uncontested, Shields is *pro se*, and he complied with Rule 59(e)'s filing timeline.  *Id.*; Fed. R. Civ. P. 59(e); *see U.S. v. Eleven Vehicles, Their Equipment and Accessories*, 200 F.3d 203, 215 (3d Cir. 2000) (a district court may depart from local procedural rules where "(1) it has a sound rationale for doing so, and (2) so doing does not unfairly prejudice a party…").

The Court retains inherent jurisdiction over interlocutory orders, which may be revised at any time before entry of judgment.  *See* Fed. R. Civ. P. 54(b).  "The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence."  *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985).

---

[2]   The Third Circuit has stayed Shields's appeal pending disposition of his motions to amend. *See* (ECF 20, USCA Docket No. 22-3006).

[3]   Although courts in this District typically evaluate motions to reconsider interlocutory orders under Fed. R. Civ. P. 59(e) standards anyway, the Court draws this distinction because the Third Circuit has stayed its review of Shields's appeal pending this decision.  *See, e.g., United States v. Cephalon, Inc.*, 159 F. Supp. 3d 550, 554–555 (E.D. Pa. 2016); *Continental Cas. Co. v. Diversified Industries, Inc.*, 884 F. Supp. 937, 943 (E.D. Pa 1995); *McCowan v. City of Philadelphia*, No. 19-3326, 2020 WL 6262182, at *2 (E.D. Pa Oct. 23 2020).

To prevail, the moving party must show (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court issued its order; or (3) the need to correct a clear error of law or fact to prevent manifest injustice." *United States v. Cephalon, Inc.*, 159 F. Supp. 3d 550, 554–555 (E.D. Pa. 2016) (quoting *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 678 (3d Cir. 1999)). Those motions are "not properly founded on a request that the Court rethink what it had already thought through—rightly or wrongly." *Pollock v. Energy Corp. of Am.*, 665 F. App'x 212, 218 (3d Cir. 2016).

II

Shields does not argue a change in controlling law or the availability of new evidence. Instead, he identifies "ten (10) inaccurate statements and/or clerical errors, and additional omissions" in the September 29 Order and Memorandum and various "incorrect" "conclusions of controlling law." (Mot. Reconsider iii) (emphasis omitted). The Third Circuit has "never adopted strict or precise definitions for 'clear error of law or fact' and 'manifest injustice' in the context of a motion for reconsideration," but "the focus is on the gravity and overtness of the error." *In re Energy Future Holdings Corp.*, 904 F.3d 298, 311–12 (3d Cir. 2018).

A

The majority of Shields's alleged factual errors concern the September 29 Memorandum's phrasing of certain facts. *See* (Mot. Reconsider 2–24). Shields argues some word choice amounts to "unfair suggestion[s]" used to "tell a story" in Officer Wiegand's favor. (*Id*. at 4.) He requests the Court amend its decision to use his exact

3

phrasing, incorporate new context he provides for the first time in his Motion, and include twenty additional facts he considers relevant. (*See, e.g., id.* at pp. 2, 3, 15–24.)

The September 29, 2022 Order grants a partial motion to dismiss; it does not make findings of fact nor does it change the facts as alleged in the Amended Complaint. If necessary, Shields will have a full opportunity to argue the facts as he sees fit at summary judgment or trial. While Shields correctly points out some minor "clerical" errors, including those detailed in Section V and VI of his Motion, they do not warrant reconsideration of the decision, nor would his proposed revisions change its outcome.[4] The Court fully considered Shields's alleged facts and he fails to show any overt or grave substantive errors.

B

Shields first argues the Court erred by dismissing his Fourth Amendment claims arising from the pursuit. (Mot. Reconsider Section X, XI.) Shields cites predominately to *Michigan v. Chesternut* and its progeny, where the Supreme Court refused to adopt a bright-line rule that police chases do not constitute Fourth Amendment seizures. 486 U.S. 567, 527 (1998). *Chesternut* itself, however, notes that courts must take into account "all of the circumstances surrounding the incident" to determine whether a seizure occurred, which is precisely what the September 29 Memorandum does. (*Id*; Sept. 29 Mem. Section V.A.)

Shields argues the cases cited in the Memorandum's Fourth Amendment analysis are distinguishable because, here, Defendants had no probable cause or reasonable suspicion to pull him over. *See* (Mot. Reconsider Section XI.) The Court's

---

[4] Other identified errors arise from Shields's own lack of specificity in the Amended Complaint. *See* (Mot. Reconsider Sections I, III).

4

Fourth Amendment analysis focused on Shields' admission that the pursuit ended when "his sneaker fell off of his foot, causing him to trip and fall," concluding there was no seizure because "the authority of the law" did not end the chase. (Am. Compl. ¶ 30; Sept. 29 Memorandum 8–9.)  Despite his argument to the contrary, Paragraph 30 of Shields's Amended Complaint precludes the Court from considering whether the taser caused his fall. *See* (Am. Compl. ¶ 30.)

Shields makes the same arguments in the Fourteenth Amendment context: without reasonable suspicion, the pursuit was unjustified. (Mot. Reconsider XI).  The September 29 Memorandum concluded that Shields's allegations establish he ran a red light. (Sept. 29 Mem. 12.)  A strained reading of Paragraphs 4–6 of the Amended Complaint could reveal that Shields, while driving the speed limit, timed his entry into the intersection so perfectly that his car crossed the line just early enough to beat the red signal, but just late enough that the signal stopped Officer Wiegand, who was tailgating directly behind him. (Am. Compl. ¶¶ 4–6.)  Even if this were a reasonable reading of the amended complaint, any error in the September 29 Memorandum would be immaterial.

Reasonable suspicion is "based on commonsense judgments and inferences about human behavior," and "nervous, evasive behavior is a pertinent factor in determining" it. *Illinois v. Wardlow*, 528 U.S. 119, 124–125 (2000); *United States v. Lewis*, 672 F.3d 232, 237 (3d Cir. 2012) ("[t]he requirement of reasonable suspicion for a *Terry* stop-and-frisk applies with equal force to a traffic stop of a vehicle").  Even if the suspicious conduct is lawful and could be explained innocently, officers are permitted to make a stop. *Illinois,* 528 U.S. at 125 (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)).

Paragraphs 4–8 of the Amended Complaint, read in any light, establish that Shields went to great lengths to avoid contact with Officer Wiegand: near midnight, after Officer Wiegand's vehicle approached, Shields twice switched lanes, repeatedly made efforts to let Wiegand pass him and, at best, strategically timed his entry into an intersection to "create separation." (Am. Compl. ¶ 4). His behavior creates reasonable suspicion for an investigatory stop and, in any event, the chase didn't begin until after Wiegand activated his police lights and Shields "quickly" fled. (*Id*. at ¶ 9.) From that moment on, Officer Wiegand unquestionably had grounds to pursue. *Illinois*, 528 U.S. at 125 (finding flight from police a basis for reasonable suspicion); *Scott v. Harris*, 550 U.S. 372, 383 (2007) (noting flight always involves the "paramount" government interest in public safety).

Shields's other alleged "errors" are insignificant. The Court considered Shields's allegation that Officer Wiegand violated department policy and concluded that it did not constitute an "intent to harm" under the alleged Fourteenth Amendment violation. (*See* Mot. Reconsider XII; Sept. 29 Mem. 14–16.) The September 29 Memorandum also concluded that Shields failed to show how East Lampeter's policies meet the deliberate indifference standard required for Section 1983 claims. (Sept. 29 Mem. 20–21.) Shields does not need the Court's permission to seek discovery of video evidence, and the footage will be properly considered, if relevant, at summary judgment or trial. (Mot. Reconsider XIII.) The cases Shields cites, including *Scott v. Harris,* concern whether a court may consider, at summary judgment, video evidence that contradicts the non-moving party's allegations; here, in reviewing Defendants' 12(b)(6) motion, the Court considered all alleged facts in a light most favorable to Shields. 550 U.S. 372, 378

(2007). Finally, the Court found that the Amended Complaint did not properly allege intentional infliction of emotional distress. (Mot. Reconsider XIV; Sept. 29 Mem. 2 n.2 (citing Fed. R. Civ. P. 8(a)). Unless Shields requests and receives leave to amend his complaint, his IIED claims will not be considered further. *See* (September 29 Mem. 2 n.2).

Because Motions to reconsider are not an opportunity to ask the Court to "rethink" what it has already decided, and Shields has failed to show any grave or overt errors of fact or law, his motion is denied. *Pollock,* 665 F. App'x at 218. His related filings at ECF Nos. 136, 138, 142, 150 and 151 are denied as moot.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.

7