**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SOLISHUM SUMÉR SHIELDS,<br><br>*Plaintiff,*<br><br>v.<br><br>RYAN WIEGAND, *et al.*,<br><br>*Defendants.* | CIVIL ACTION<br>NO. 20-2999 |

**MEMORANDUM**

**PAPPERT, J.**                                                                                   **November 17, 2023**

Solishum Sumér Shields sued East Lampeter Township and Township police officer Ryan Wiegand, as well as Pennsylvania State Police Corporals Michael Dugan and James Wisnieski and Troopers Kyle Schiltz, Alexander Barry, Joshua Linamen and Colton Demberger ("the Commonwealth Defendants") over a police pursuit and arrest in 2019. Shields alleges Wisnieski, Dugan, Barry and Linamen used excessive force when chasing the car Shields was driving, and that Wiegand, Barry, Dugan, Wisnieski and Schiltz used excessive force while arresting him, including after he was handcuffed. (Am. Compl. 19-20, ECF No. 41.)[1] Shields also asserts against some of the officers a claim for assault and battery, a failure to intervene claim against Demberger and Linamen and a failure to train claim against the Township. (*Id.* at 19-20.)

Wiegand and the Township previously moved to partially dismiss Shields's Amended Complaint, arguing Shields failed to allege facts which could establish that the police pursuit violated his Fourteenth Amendment rights. (ECF No. 43.) Judge

---

[1]     Page numbers are those assigned by ECF.

Jones granted the motion without prejudice, giving Shields thirty days to amend his pleading a second time. (ECF No. 133.) He chose not to do so.

After the case's reassignment to this Court following Judge Jones's retirement, the Commonwealth Defendants filed their motion to partially dismiss the Amended Complaint. (Mem. in Supp. of Mot. to Dismiss 2, ECF No. 216.) The Court grants the motion in part and denies it in part for the reasons that follow.

I

On the night of December 2, 2019, Shields alleges that while driving in Lancaster, Pennsylvania, he noticed an unmarked car, which he later learned was driven by Wiegand, tailgating him. ((Am. Compl. ¶ 1.) He claims he was obeying the speed limit and not driving erratically. (*Id.* ¶ 2.) Despite his attempts to allow Weigand to pass him, Shields alleges that he continued to follow him closely with his car's headlights off. (*Id.* ¶¶ 3-4.) In an attempt to "create a separation" between Wiegand's car and his, Shields went through a traffic light "while the other vehicle got stopped at the red light." (*Id.* ¶ 5.) It is unclear whether Shields acknowledges he ran the light while it was red or went through the intersection while it was yellow.

At the next red light, Wiegand pulled up slightly behind Shields in the adjacent lane and turned his headlights on. (*Id.* ¶ 6.) When the light turned green, Shields alleges, Wiegand "hesitated" and moved back into Shields's lane and stayed behind him. (*Id.* ¶ 7.) When Shields again switched lanes to allow Wiegand to pass him, "suddenly blinking lights started flashing from within the unmarked vehicle." (*Id.* ¶ 8.) Shields alleges that since he was not familiar with his location, it was late at night and because of Wiegand's allegedly threatening behavior, he drove to "the first public place

he believed might have witnesses for his safety and protection," a Walmart on Lincoln Highway in Lancaster. The store, however, was apparently closed and the parking lot empty. (*Id.* ¶¶ 9-10.) He continued looking for other public places to stop, but everything was closed. (*Id.* ¶ 11.) Because of Wiegand's "aggressive" driving, Shields alleges, he feared for his life and did not stop his car, turning instead off Lincoln Highway onto a back road. (*Id.* ¶¶ 12-14.)

He claims his car's brakes then malfunctioned, preventing him from slowing the car down, and that he turned on his hazard lights to "alert the unmarked vehicle to stop chasing him," to no avail. (*Id.* ¶¶ 16-17.) Shields contends that Wiegand then tried to force him into a head-on collision with an oncoming truck. (*Id.* at ¶ 19.) At around 12:30 a.m., other police cars allegedly driven by Wisnieski and Demberger deployed spike strips, blowing out Shields's tires and leaving him unable to control his car. (*Id.* at ¶¶ 20-21.) After Shields slowed down, another police car allegedly driven by Dugan, Barry or Linamen drove in front of Shields and braked, causing him to crash into it. (*Id.* ¶¶ 22-24.) This police car then allegedly pulled into the opposite lane and "crashed into the driver's side of [Shields's] vehicle in an attempt to crash [him] into multiple telephone poles where there was no shoulder on the road." (*Id.* ¶ 26.) As Shields approached an intersection, he attempted to turn left, but Wisnieski then allegedly slammed into his car, causing him to spin out. (*Id.* ¶ 28.) Shields then got out of his car and "began to run out of pure terror and fear for his life." (*Id.* ¶ 29.)

Shields then tripped while Wiegand allegedly tazed him. (*Id.* ¶ 30.) After he fell, "multiple police officers seized him, picked him up and slammed him back down onto his knees, hands, chest[] and face." (*Id.* ¶¶ 31-32.) One officer Shields believes to

be Schiltz kicked him in the head several times, Wiegand again tazed him, and Shields was then handcuffed. (*Id.* ¶¶ 33, 36.) After that, Wiegand allegedly continued to taze and mock him, while another officer grabbed him by the hair and "smashed his face into the concrete," with other officers punching him in the head and face. (*Id.* ¶¶ 34-35.) He claims Wiegand, Dugan, Barry and Wisnieski beat him while Linamen and Demberger "watched and did nothing to stop the beating." (*Id.* ¶¶ 37, 39.) When he was subsequently taken to the hospital, Shields alleges his medical records were falsified, "under heavy police influence," to make it look like his injuries resulted from a car accident. (*Id.* ¶ 45.)

Shields is currently serving a sentence at Chester County Prison "in relation to this matter." (*Id.* at ¶ 46.) He pled guilty to fleeing or attempting to elude a police officer in violation of 75 Pa. C.S. § 3733(a), recklessly endangering another person in violation of 18 Pa. C.S. § 2705, driving under the influence in violation of 75 Pa. C.S. § 3802(d)(3) and resisting arrest in violation of 18 Pa. C.S. § 5104.[2] Shields contends that the Commonwealth Defendants' conduct constituted assault and battery as well as excessive force and illegal seizure of his person in violation of the Eighth Amendment's Cruel and Unusual Punishment Clause, the Fourth Amendment's prohibition on unreasonable searches and seizures and the Fourteenth Amendment's Due Process Clause. (Am. Compl. at 19.) He further claims that Demberger and Linamen are

---

[2] Section 3733(a) provides that "[a]ny driver of a motor vehicle who willfully fails or refuses to bring his vehicle to a stop, or who otherwise flees or attempts to elude a pursuing police officer, when given a visual and audible signal to bring the vehicle to a stop, commits an offense." 75 Pa. C.S. § 3733(a). Ordinarily, violating Section 3733(a) is a misdemeanor, but such a violation becomes a felony if the driver, "while fleeing or attempting to elude a police officer" either violates Section 3802, "relating to driving under influence of alcohol or controlled substance," or "endangers a law enforcement officer or member of the general public due to the driver engaging in a high-speed chase." 75 Pa. C.S. § 3733(a.2)(1)(i), (iii).

4

"directly liable under 42 U.S.C.[] § 1983" for failing to intervene during his alleged beating. (*Id.*) Shields also claims that the Township acquiesced in the misconduct by failing to adequately train Wiegand regarding lawful use of force, vehicle pursuit and arrest procedure. (*Id.* at 20.)

The Commonwealth Defendants read the Amended Complaint to also allege false arrest and argue this claim is barred by the favorable termination rule articulated in *Heck v. Humphrey,* 512 U.S. 477 (1994). (Mem. in Supp. of Mot. to Dismiss 8-10.) They further argue Shields's allegations regarding the police pursuit fail to state a claim when analyzed under the Fourteenth Amendment. (*Id.* at 6.) They also seek dismissal of all Shields's Eighth Amendment claims and all claims he brings against them in their official capacities. (*Id.*) They do not seek to dismiss Shields's allegations of excessive force during his arrest, (Mem. in Supp. of Mot. to Dismiss 6 n.1), or discuss his assault and battery claim.

II

To avoid dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead factual allegations sufficient to state a claim that is facially "plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the facts pleaded permit a court to make the reasonable inference that the defendant is liable for the alleged misconduct. *Id.* The "mere possibility of misconduct" is not enough; the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678-79 (quoting *Twombly*, 550 U.S. at 570).

Determining plausibility is a "context-specific task" requiring a court to use its "judicial experience and common sense." *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016) (quotations omitted). In making this determination, the court assumes well-pleaded facts are true, construes those facts in the light most favorable to the plaintiff, and draws reasonable inferences from them. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016). However, "conclusory assertions of fact and legal conclusions" are not entitled to the same presumption of truth. *Schuchardt*, 839 F.3d at 347. This presumption attaches only to those allegations supported by sufficient facts. *Id.*

Because Shields is proceeding *pro se*, the Court liberally construes his Amended Complaint. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021). Courts especially remain flexible when dealing with imprisoned *pro se* litigants like Shields. *Id.* (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

III

Though his claims for relief do not explicitly include a false arrest claim, Shields alleges he "was driving the speed limit and not driving erratically," and that the pursuit started because Wiegand followed him in an unmarked car and in an "aggressive" manner. (Am. Compl. ¶ 2-15.) He alleges "illegal seizure of [his] person." (*Id.* at 19.) Liberally construed, the Amended Complaint claims that there was no justification for initiating pursuit in the first place.

Because Shields ultimately "pled guilty and was convicted on all charges for which he was arrested," the Commonwealth Defendants argue the favorable

termination rule bars Shields from bringing a false arrest claim. (Mem. in Supp. of Mot. to Dismiss 8-9.)

A

When a state prisoner brings a Section 1983 claim, "the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Heck*, 512 U.S. at 487. Under this "favorable termination" rule, if a claim implies a sentence or conviction is invalid, the plaintiff must prove "that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486-87. If the plaintiff cannot do so, the claim is not cognizable under Section 1983. *Id.* at 487. But if a court finds that the plaintiff's action "even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed." *Id.* (emphasis in original).

Since a conviction and sentence can be upheld even if the police initially lacked probable cause to stop and arrest the plaintiff, not every false arrest claim implies that the conviction or sentence is invalid. *Montgomery v. De Simone*, 159 F.3d 120, 126 n.5 (3d Cir. 1998); *Mackey v. Dickson*, 47 F.3d 744, 746 (5th Cir. 1995). Whether a false arrest claim would imply the invalidity of a conviction or sentence is accordingly a case-by-case determination. *Bronowicz v. Allegheny Cnty.*, 804 F.3d 338, 346 (3d Cir. 2015).

In determining whether to grant motions to dismiss based on the favorable termination rule, courts may consider plaintiffs' conviction records and plea transcripts.

7

*See, e.g.*, *Khan v. Borough of Englewood Cliffs*, No. 12-7837, 2014 WL 295069, 2014 U.S. Dist. LEXIS 9958, at *8 (D.N.J. Jan. 27, 2014); *Kist v. Fatula*, No. 3:2006-67, 2007 WL 2404721, 2007 U.S. Dist. LEXIS 60615, at *16-17 (W.D. Pa. Aug. 17, 2007).

B

In order to prevail on a false arrest claim, a plaintiff must show (1) that an arrest occurred; and (2) that it was made without probable cause. *Harvard v. Cesnalis*, 973 F.3d 190, 199 (3d Cir. 2020) (quotations omitted). False arrest claims "necessarily fail if probable cause existed for any one of the crimes charged against the arrestee." *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 477 (3d Cir. 2016) (quotations omitted).

If a plaintiff has been "convicted of and sentenced for the crime of resisting arrest, defined as intentionally preventing a peace officer from effecting a *lawful* arrest," he cannot subsequently bring a Section 1983 action challenging the arrest's validity, since "he would have to negate an element of the offense of which he has been convicted." *Heck*, 512 U.S. at 486 n.6 (emphasis in original); *Olick v. Pennsylvania*, 739 F. App'x 722, 726 (3d Cir. 2018) (same).

Again, one of the crimes Shields pled guilty to was resisting arrest in violation of 18 Pa. C.S. § 5104.[3] Under Section 5104, "a lawful arrest is an element of resisting arrest, [so] a conviction for that crime cannot be sustained where that arrest is found to be unlawful." *Commonwealth v. Jackson*, 924 A.2d 618, 621 (Pa. 2007). A false arrest claim would therefore negate Section 5104's requirement that the arrest was lawful.

---

[3] Shields argues the favorable termination rule should not govern his claim because he was convicted pursuant to a negotiated plea agreement, which defendants have multiple reasons for entering. (Mem. in Opp. to Mot. to Dismis 4, ECF No. 224); (ECF No. 84). That argument is foreclosed by Third Circuit precedent. *Curry v. Yachera*, 835 F.3d 373, 378-79 (applying the favorable termination rule to a *nolo contendere* plea even though those pleas are not treated as admissions of guilt under Pennsylvania law).

8

*Heck*, 512 U.S. at 486 n.6. To the extent Shields asserts a false arrest claim, it is barred by the favorable termination rule.

IV

A

The Commonwealth Defendants next contend that Shields's claims pertaining to the police pursuit must be analyzed under the Fourteenth rather than the Fourth Amendment and argue Shields has not alleged sufficient facts to show they acted with an improper or malicious motive as a Fourteenth Amendment claim requires. (Mem. in Supp. of Mot. to Dismiss 10-12.) *Cnty. Of Sacramento v. Lewis*, 523 U.S. 833, 855 (1998). Shields believes the Fourth Amendment governs the Court's assessment of the pursuit. (Mem. in Opp. to Mot. to Dismiss 3.) Specifically, he argues the Commonwealth Defendants' exercise of "unprovoked control of speed direction and movement of [his] vehicle" constituted an unreasonable seizure. (*Id.*)

When claims assert rights secured by "an explicit textual source of constitutional protection . . . that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Graham v. Connor*, 490 U.S. 386, 396 (1989); *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 259-61 & n.10 (3d Cir. 2010). The Fourth Amendment applies only to "searches and seizures." *Lewis*, 523 U.S. at 843. Since Shields was "seized" during the pursuit, his claim must be analyzed under the Fourth Amendment.[4]

---

[4] Because the Fourth Amendment governs claims regarding the pursuit, Shields's Fourteenth Amendment claims must be dismissed. Both the pursuit and the arrest are governed by the Fourth Amendment, so there are no remaining claims to which the Fourteenth Amendment applies. *Graham*, 490 U.S. at 396; *Betts*, 621 F.3d at 259-61.

1

A Fourth Amendment seizure occurs when police officers intentionally apply force to terminate a suspect's freedom of movement. *Brower v. Cnty. of Inyo*, 489 U.S. 593, 596-97 (1989).

The Commonwealth Defendants argue "[i]t is well-settled that claims relating to police pursuits are properly analyzed under the Fourteenth Amendment." (Mem. in Supp. of Mot. to Dismiss 10.)  But there is no "bright-line rule applicable to all investigatory pursuits," because "any assessment as to whether police conduct amounts to a seizure implicating the Fourth Amendment must take into account all of the circumstances surrounding the incident in each individual case." *Michigan v. Chesternut*, 486 U.S. 567, 572 (1988) (quotations omitted).  At the pleading stage, the specific factual allegations determine the applicable Amendment.

When the police terminate a suspect's freedom of movement through means intentionally applied, a Fourth Amendment seizure occurs. *Brower*, 489 U.S. at 596-97. While a termination of freedom of movement is sufficient, it is not necessary to constitute a Fourth Amendment seizure. *Torres v. Madrid*, 141 S. Ct. 989, 994 (2021).

In *Torres*, the Supreme Court clarified that a Fourth Amendment seizure "requires *either* physical force . . . *or*, where that is absent, *submission* to the assertion of authority." *Id.* at 994-99 (emphasis in original) (quoting *California v. Hodari D.*, 499 U.S. 621, 626 (1991)).  The Third Circuit recognized this framework even before *Torres* clarified it. *United States v. Brown*, 448 F.3d 239, 245 (3d Cir. 2006) ("A seizure occurs where there is . . . 'a laying of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful'" (quoting *Hodari D.*, 499 U.S. at

626)). When a seizure is effected by even the slightest application of physical force, "it is immaterial whether the suspect yields to that force." *Id.*

Post-*Torres*, two types of seizures exist: seizures by acquisition of control and seizures by force. *Torres*, 141 S. Ct. at 1001. And "each type of seizure enjoys a separate common law pedigree that gives rise to a separate rule." *Id.*

A seizure by acquisition of control involves either the termination of freedom of movement or voluntary submission to a show of authority. *Id.* These seizures require that "a person be stopped by the very instrumentality set in motion or put in place in order to achieve that result." *Id.* (quoting *Brower*, 489 U.S. at 599). This "requirement of control or submission," however, does not extend to seizures by force. *Id.*

A seizure by force "requires the use of force with intent to restrain," as opposed to force applied by accident or for some other purpose. *Id.* at 998 (emphasis removed). These seizures last "only as long as the application of force." *Id.* at 999. The Fourth Amendment does not recognize any "*continuing* arrest during the period of fugitivity." *Id.* (emphasis in original) (quoting *Hodari D.*, 499 U.S. at 625). Therefore, while some seizures may be "fleeting" in nature, "brief seizures are seizures all the same." *Id.*

Multiple seizures can therefore occur during a single pursuit or attempt to subdue a suspect. *See, e.g.*, *Gardner by & Through Gardner v. Buerger*, 82 F.3d 248, 250, 254 & n.9 (8th Cir. 1996) (finding one seizure where an officer subdued the decedent on the floor and a second seizure where the officer shot the decedent after he escaped from this position and stood up); *Ludwig v. Anderson*, 54 F.3d 465, 471 (8th Cir. 1995) (finding one seizure where an officer hit the decedent with a squad car, another seizure where the officer shot the decedent, and acknowledging two more

potential seizures when the police twice applied mace to the decedent); *see also Thomas v. Durastanti*, 607 F.3d 655, 663 (10th Cir. 2010).

The Commonwealth Defendants' various alleged attempts to stop Shields's car may plausibly constitute seizures because they were all applications of force intended to terminate Shields's freedom of movement, even though they were unsuccessful.[5] *Brower*, 489 U.S. at 597 (a seizure occurs where a police cruiser pulls alongside a fleeing vehicle and sideswipes it, producing a crash); *Scott v. Harris*, 550 U.S. 372, 381 (2007) (an officer's "decision to terminate [a] car chase by ramming his bumper into [a fleeing suspect's] vehicle constituted a 'seizure'"). This includes the deployment of the spike strips. *Brower*, 489 U.S. at 598-99 (stopping a fleeing suspect with a roadblock "is enough to constitute a 'seizure' within the meaning of the Fourth Amendment").[6]

2

In order to prevail on a Fourth Amendment excessive force claim, "a plaintiff must show that a seizure occurred and that it was unreasonable under the circumstances." *Jefferson v. Lias*, 21 F.4th 74, 78 (3d Cir. 2021) (quoting *El v. City of Pittsburgh*, 975 F.3d 327, 336 (3d Cir. 2020). Determining whether force is reasonable

---

[5] The Court recognizes Judge Jones resolved this question differently with respect to Wiegand. (ECF No. 132.) Contrary to the Commonwealth Defendants' arguments, this determination need not be the law of this case going forward, as "the law of the case doctrine does not restrict a court's power but rather governs its exercise of discretion." *Saint-Jean v. Palisades Interstate Park Comm'n,* 49 F.4th 830, 836 & n.3 (3d Cir. 2022) (cleaned up, quotations omitted). Courts may exercise this discretion to avoid unjust results. *In re Pharm. Benefit Managers Antitrust Litig.*, 582 F.3d 432, 439 (3d Cir. 2009) (quotations omitted).

[6] Both the hypothetical seizure described in *Brower* and the seizure in *Scott* were seizures by acquisition of control since both involved instances where the suspect's freedom of movement was actually terminated. Similar unsuccessful attempts constitute seizures by force. *Torres*, 141 S. Ct. at 1001-03. The actual seizure at issue in *Brower* was also a seizure by acquisition of control because the suspect's collision with the roadblock proved fatal and ended the pursuit. *Brower*, 489 U.S. at 598 ("a roadblock is not just a significant show of authority to induce a voluntary stop, but is designed to produce a stop by physical impact if voluntary compliance does not occur").

"requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* (quoting *Graham*, 490 U.S. at 396). The inquiry is objective and takes account of "the facts and circumstances confronting [the officers], without regard to their underlying intent or motivation." *Id.* at 78-79 (quoting *Graham*, 490 U.S. at 397).

Factors relevant to determining whether force is reasonable include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he actively is resisting arrest or attempting to evade arrest by flight." *Rivers v. City of Passaic*, 365 F.3d 181, 198 (3d Cir. 2004) (quoting *Graham*, 490 U.S. at 396). Additional factors include "the physical injury to the plaintiff, the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." *Lias*, 21 F.4th at 79 (quoting *El*, 975 F.3d at 336). The method of force also matters; "it may be reasonable for an officer to bump a car off the road to stop a reckless driver who is placing others in peril, while simultaneously unreasonable to shoot directly at a driver who is coming toward an officer when the officer has the opportunity to move out of the way." *Id.* at 83 n.4 (quotations omitted).

Given the inquiry's fact-dependent nature, "the reasonableness of the use of force is normally an issue for the jury," *id.* at 79 (cleaned up, quotations omitted); courts lack clearly defined rules for determining when conduct is unreasonable in a specific

13

context, so they rely on jury decisions to ensure that an ultimate determination of reasonableness "is itself reasonable and widely shared." *Abraham v. Raso*, 183 F.3d 279, 289-90 (3d Cir. 1999).

B

A police officer who attempts "to terminate a dangerous high-speed car chase that threatens the lives of innocent bystanders does not violate the Fourth Amendment, even when it places the fleeing motorist at risk of serious injury or death." *Scott*, 550 U.S. at 386; *see also, e.g.*, *Cheeks v. Belmar*, No. 4:18-2091, 2020 WL 5569982, 2020 U.S. Dist. LEXIS 170149, at *38-46 (E.D. Mo. Sept. 17, 2020) (dismissing an excessive force claim against officers who employed a PIT ["Precision Immobilization Technique"] maneuver to terminate a high-speed pursuit "at speeds up to 90 miles per hour in a primarily residential area with a speed limit between 35 and 40 miles per hour"). On the other hand, the use of a PIT maneuver on a fleeing vehicle in a low-speed pursuit has been described as lying on the "hazy border between excessive and acceptable force." *Moore-Jones v. Quick*, 909 F.3d 983, 984-87 (8th Cir. 2018) (quoting *Mullenix v. Luna*, 577 U.S. 7, 18 (2015)).

Because the ultimate question of the reasonableness of force in this case "turns on factual matters outside the pleadings," it is "not amenable to resolution through a motion to dismiss, where our judgment is cabined and confined by the well-pleaded facts in the complaint." *Velardo v. Lewko*, No. 3:18-1885, 2019 WL 5095657, 2019 U.S. Dist. LEXIS 143792, at *21 (M.D. Pa. Aug. 22, 2019) (quotations omitted). This question is "better suited for disposition following discovery and upon consideration of a full factual record outlining the precise facts and circumstances of the incident."

14

*Williams v. Rider*, No. 1:12-1566, 2014 WL 3881624, 2014 U.S. Dist. LEXIS 109269, at *15 (M.D. Pa. Aug. 7, 2014).

V

The Commonwealth Defendants also argue, correctly, that Shields's Eighth Amendment claims must be dismissed because the Eighth Amendment does not apply to any alleged events described in the Amended Complaint since they all occurred prior to his conviction. (Mem. in Supp. of Mot. to Dismiss 12-13.)

The Amended Complaint alleges Eighth Amendment excessive force and failure to intervene claims. (Am. Compl. at 19.) While both of these claims are cognizable under the Eighth Amendment as a general matter, *see, e.g.*, *Young v. Martin*, 801 F.3d 172, 177 (3d Cir. 2015) (excessive force); *Smith v. Mensinger*, 293 F.3d 641, 650-52, (3d Cir. 2002) (failure to intervene), the Eighth Amendment's protections apply "only after the State has secured a formal adjudication of guilt in accordance with due process of law." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003) (cleaned up) (quoting *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983)).

VI

Finally, the Commonwealth Defendants assert that all of Shields's claims against them in their official capacities should be dismissed because they are barred by Eleventh Amendment immunity and they are not "persons" under Section 1983. (Mem. in Supp. of Mot. to Dismiss 13-15.) *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 309-10 (3d Cir. 2020); *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 697-98 (3d Cir. 1996).

But Shields's Amended Complaint explicitly states that "PSP officers [are] sued in their individual capacity," while "all others [are] sued in their individual and official

15

or municipal capacity." (Am. Compl. at 3.) The Commonwealth Defendants are all identified in the Amended Complaint as PSP officers. (*Id.*) There are no claims against the Commonwealth Defendants in their official capacities.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.