IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SOLISHUM SUMÉR SHIELDS,<br><br>    *Plaintiff,*<br><br>v.<br><br>RYAN WIEGAND, et. al.,<br><br>    *Defendants.* | CIVIL ACTION<br>NO. 20-2999 |

**Pappert, J.**                                                                                   **October 28, 2024**

## MEMORANDUM

On June 9, 2020, Solishum Sumér Shields filed this lawsuit against East Lampeter Township, the Pennsylvania State Police and numerous law enforcement officers over a 2019 police pursuit and arrest. Almost four and one-half years later, discovery has yet to conclude. Not for lack of trying—at least on the part of the defendants who remain in the case and the Court. In fact, the Court has implemented three scheduling orders and the defendants have expended tremendous time and effort to move the case along. Shields has not been dormant. Quite the contrary. He has filed, among many other things, forty-eight motions, twenty-five letters, requests (and some e-mails to the Court), twenty-three praecipes and motions for default judgment[1] and two notices of appeal. What he hasn't done is cooperate in the discovery process. He has not answered interrogatories or document production requests. He has not

---

[1] One of his recent filings asserts that the defendants "agreed, off record" to pay him six-hundred billion dollars and vacate his criminal record if he were to "drop both lawsuits" against them. (ECF No. 294.) He claims the defendants breached their "settlement contract" and again seeks sanctions against them.

given defense counsel signed authorizations which would enable them to obtain relevant medical records.

With nowhere else to turn, the defendants moved to compel Shields to follow the rules. The Court granted the motion and ordered Shields to respond to the discovery requests, to include all requested medical records and authorizations, on or before May 24. Shields ignored the Order and the defendants filed a motion for sanctions. With the latest scheduled discovery deadline approaching, the defendants also noticed Shields' deposition for September 5, expressing a willingness to accommodate Shields if that date didn't work for him. He never replied and never showed, leading to a second sanctions motion. The Court scheduled a hearing on the motions for October 21, prompting an e-mail from Shields requesting to have the hearing held via Zoom. The Court, given the seriousness of the matter, denied the request. Shields blew off the hearing.

Shields is *pro se*, but he "must abide by the same rules that apply to all other litigants." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013). He has done little, if anything, beyond what suits him. He has littered the docket with meritless and often frivolous filings. He has ignored the Federal Rules of Civil Procedure and failed to respond to discovery requests and then violated the Court's Order compelling him to do so. He has made numerous misrepresentations to the Court and counsel and failed to appear for his deposition. He has done all of it willfully and in bad faith, prejudicing the defendants' ability to defend themselves. The defendants have done their part and the Court has seen, and had, enough. The Court grants the defendants' motions and dismisses this case with prejudice.

I

A

On April 5, 2021, Shields filed his amended complaint, pursuant to 42 U.S.C. Section 1983, alleging excessive force in violation of the Fourth Amendment, false arrest, failure to train, cruel and unusual punishment under the Eighth Amendment, and assault and battery. (ECF No. 41.) In this most recent iteration of his filing, Shields sued police officers Ryan Wiegand, James Wisnieski, Michael Dugan, Alexander Barry, Joshua Linamen, Colton Demberger and Kyle Schiltz. He also sued East Lampeter Township. (*Id.*)

Wiegand and the township filed a partial motion to dismiss, (ECF No. 43), as did Wisnieski, Dugan, Barry, Linamen, Demberger and Schiltz, (ECF No. 216.) The Court dismissed the Eighth Amendment and false arrest claims against all defendants, as well as the failure to train claim against the township. (ECF Nos. 133, 227.) The following claims remain against the following defendants: (1) assault and battery against Wiegand, Schlitz, Wisniewski, Dugan, Barry and Linamen, (2) use of excessive force in violation of the Fourth Amendment against Wisnieski, Dugan, Barry and Linamen, (3) a separate Fourth Amendment excessive force claim against Wiegand, Barry, Dugan, Wisnieski and Schiltz, and (4) failure to intervene against Demberger and Linamen. (Am. Compl. at 18-19, ECF No. 41.)

B

On January 17, 2024, the Court scheduled a Rule 16 conference for January 30, 2024 and ordered the parties to "complete and file with the Clerk the required Report" under Federal Rule of Civil Procedure 26(f) by January 26, 2024. (ECF No. 238.) The

defendants filed their 26(f) report on January 25, 2024, noting that they had "attempted to hold the Rule 26(f) Conference with Plaintiff, but he was unresponsive." (ECF No. 234.) Shields did, however, join the on-the-record telephone conference on January 30. *See* (Rule 16 Tr., ECF No. 282). In an effort to establish more control over the case and track what the parties were doing, the Court ordered the parties to file all discovery requests and documents on the docket. (Rule 16 Tr. at 13:13-19.) The Court told Shields he was required to produce complete medical records or authorizations to defendants and that the Court, not he, was the arbiter of relevance. (Rule 16 Tr. 37:12-20.) Later that day, the Court issued its first scheduling order, requiring all discovery to be completed by May 31, 2024. (ECF No. 238.) Also that day, Wiegand served Shields with interrogatories and document production requests, as well as authorizations for the release of medical records from PrimeCare Medical, Inc. and Jennersville Hospital Tower Health, where Shields had purportedly received treatment for his alleged injuries after the incident. (ECF No. 236.) Shields replied by e-mail to these requests with a single sentence, "Kindly refer to my previous answers and the documents filed on record." (ECF No. 285-1.)

Although Shields did not specify to which of the (then) 238 docket entries he was referring, he recently cited ECF entries 10, 11, 12, 13, 14, 15, 20, 22, 57, 68, 73, 78, 186, 200, 201, 202, and 211. *See* (Pl. Resp. to Defs. Joint Mot. to Compel at 1, ECF No. 266). None of those filings responded to the defendants' interrogatories but they did include some medical records. For example, Shields submitted selected and annotated records from his initial emergency room visit at Jennersville Hospital, including an EMS transfer-of-care form, a six-page after-visit summary, a patient chart, and select pages

4

from a 72-page emergency room report. (ECF No. 20.) He also provided two separate medical records release authorizations to PrimeCare, both of which, however, authorized release of the records to him alone. (ECF Nos. 186, 290.) PrimeCare approved one of those requests on January 12, 2023. (ECF No. 200.) On February 16, 2023, Shields gave the defense more incomplete and self-annotated selections of PrimeCare medical records. (ECF No. 200.)

On April 26, 2024, Wiegand, on behalf of all defendants, filed a motion to compel answers to their interrogatories and document production requests, including requests for the medical records or release authorizations. (ECF No. 246.) The motion became necessary after the defendants unsuccessfully "attempted to contact Plaintiff on several occasions to secure cooperation." (*Id*.) Shields responded to Wiegand's motion with a "motion to compel" of his own, which read more like a request for production of documents. (ECF No. 247.) Defendants responded fully to the requests on May 3, 2024. (ECF No. 250.) On May 9, 2024, the Court granted Wiegand's motion to compel, ordering Shields, on or before May 24, 2024, to provide "full and complete responses to Wiegand's interrogatories and document production requests, to include all requested medical records and/or authorizations." (ECF No. 252.) The Court made clear that "[f]ailure to comply with this Order may result in sanctions consistent with the Federal Rules of Civil Procedure." (*Id.*) The Court also amended the scheduling order and extended the discovery deadline to July 31, 2024. (ECF No. 253.) On May 10, defendants sent Shields a pre-filled release authorization, requesting that he sign and date the form so they could subpoena the necessary medical records in compliance with the Court's Order. (ECF No. 256.) May 24 came and went. Shields did not respond to

5

the interrogatories, did not produce the requested documents and did not return release authorizations.

Citing Shields' discovery failures up to that time, defendants filed their first motion for sanctions on June 10, 2024 seeking dismissal of Shields' case with prejudice under Federal Rule of Civil Procedure 41(b). (ECF No. 263.) Shields responded to the motion on July 8, 2024, claiming that he had "gracefully" provided defendants with "thousands of documents." (ECF No. 266.)

C

With the sanctions motion pending, Shields still did not respond to defendants' interrogatories and document production requests or return the releases by the July 31 discovery deadline, forcing the defendants to request a second extension of that deadline until September 16, 2024. (ECF No. 270.) The Court granted the request. (ECF No. 271.) After unsuccessfully attempting to discuss it with him, defendants noticed Shields' deposition for September 5, 2024, expressing a willingness to discuss other dates. (ECF No. 273.) Shields never replied and stood counsel up on September 5. (Sanctions H'rg Tr. at 24); (Dep. Tr. at 1:1-16, ECF No. 275-3.)

On September 16, defendants filed their second sanctions motion, given Shields's failure to appear at his deposition. (ECF No. 275.) Shields "responded" to the motion, though it read more like a sanctions motion of his own. (ECF No. 276.) Because the discovery deadline had come and gone without the defendants getting what they needed, the Court vacated its second amended scheduling order pending the resolution of both sanctions motions. (ECF No. 271.)

D

The Court scheduled a hearing on the sanctions motions for October 21. (ECF No. 279.) On October 15, citing a purported "lack of transportation," Shields requested that the hearing be held via Zoom video conference as Magistrate Judge Hey had done for an earlier-scheduled settlement conference. (ECF No. 280.) The Court denied Shields' request, stating that this was not a settlement conference and that the Court always holds sanctions hearings in person. (ECF No. 281.) Shields did not request a different date for the hearing or communicate any further with the Court, at least not on this topic. He then failed to appear, though the Court questioned defense counsel on positions Shields had taken in relevant e-mails and filings. *See generally* (Sanctions Tr. at 29-31).

For example, Shields has repeatedly accused the defense of failing to give him the mobile video recorder (MVR) footage from Officer Wiegand's dashcam. But the defense sent Shields the footage on December 19, 2022, (ECF Nos. 285, 285-2), and Shields obviously received and viewed it—on February 24, 2023, Shields submitted a copy of Wiegand's MVR footage to the Court. (ECF No. 201.) But then Shields claimed he didn't have it. *See, e.g.*, (ECF No. 247-6). So counsel e-mailed Shields links to Wiegand's MVR footage. (ECF Nos. 285-4, 285-5.) Shields nonetheless continued to claim defendants were withholding it. (ECF Nos. 247-6, 276, 286, 289.)

II

The Court's power to impose sanctions against a noncompliant party derives both from its inherent authority and the Federal Rules of Civil Procedure. *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 278 F.3d 175, 189 (3d Cir.

2002). The Court may dismiss an action for failure to prosecute under Rule 41(b), which states that "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b). But Rule 37(b)(2)(A) also permits dismissal for violations of other Rules that incorporate its menu of sanctions by reference, including failure "to obey an order to provide or permit discovery," Fed. R. Civ. P. 37(b), failure, "after being served with proper notice, to appear for" one's own deposition, *id.* at 37(d)(1), or failure "to obey a scheduling or other pretrial order," *id.* at 16(f)(1). The decision to impose sanctions is "generally entrusted to the discretion of the district court." *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 538 (3d Cir. 2007).

Before dismissing a case as a sanction for a party's litigation conduct, a court typically must consider and balance the factors identified by the Third Circuit Court of Appeals in *Poulis v. State Farm Fire & Casualty Co.*, 747 F.2d 863, 868 (3d Cir. 1984):

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions and (6) the meritoriousness of the claims or defenses.

"[N]o single . . . factor is dispositive," and there is no "magic formula" or "mechanical calculation" when analyzing the *Poulis* factors. *Briscoe v. Klaus*, 538 F.3d 252, 263 (3d Cir. 2008) (citation omitted). That said, "[t]he record must support the District Court's findings." *Hildebrand v. Allegheny Cty.*, 923 F.3d 128, 132 (3d Cir. 2019).

### III

Dismissal is warranted in this case. To start, the first and fifth *Poulis* factors favor it. As a *pro se* litigant, Shields bears personal responsibility for his failures to

8

comply with the Federal Rules of Civil Procedure. *See Emerson v. Thiel Coll.*, 296 F.3d 184, 190 (3d Cir. 2002). The Court's May 9, 2024 Order made clear that Shields could face sanctions if he did not comply with defendants' requests. (ECF No. 252.) Additionally, in light of Shields' *in forma pauperis* status, alternative sanctions short of dismissal—such as fines, costs or an award of attorneys' fees—are not available. *See id.* at 191. Many non-monetary sanctions would also be ineffective, as Shields has been unwilling to comply with the Court's May 9 Order compelling production of documents and responses to interrogatories. He has also blown through discovery deadlines set by three separate scheduling orders. *See Nieves v. Thorne*, 790 F. App'x 355, 358 (3d Cir. 2019) (stating that a plaintiff's "*pro se* and IFP status, coupled with his refusal to comply with court orders, rendered lessor sanctions ineffective").

### A

The third *Poulis* factor also favors dismissal. A history of dilatoriness is established by "[e]xtensive or repeated delay or delinquency," such as "consistent non-response to interrogatories, or consistent tardiness in complying with court orders." *Adams v. Trustees of the N.J. Brewery Employees' Pension Trust Fund*, 29 F.3d 863, 874-75 (3d Cir. 1994). "[A] party's problematic acts must be evaluated in light of [his] behavior over the life of the case." *Id.* at 875.

Dilatory is a polite description of Shields' conduct in this case. Start with all of his unnecessary and meritless filings. Moving from the general to the specific, Shields did not participate in the Rule 26(f) conference, as required by the Rule and ordered by the Court. *See* Fed. R. Civ. P. 26(f)(1) ("[T]he parties *must* confer as soon as practicable

9

[before the Rule 16 conference]." (emphasis added)); (Rule 16 Order, ECF No. 233) (ordering the parties to "complete and file with the Clerk the required Report.").

Despite being ordered at the Rule 16 conference to provide medical records or authorization forms so counsel could obtain the records—an essential part of evaluating Shields' alleged injuries—Shields failed to do so. (Rule 16 Tr. 37:12-20.) Nor did he respond to defendants' interrogatories or other document production requests. Instead, he referred counsel to "my previous answers and the documents filed on record." (ECF No. 285-1.) Again, although Shields did not specify which of the hundreds of docket entries he was alluding to, he later cited ECF Nos. 10, 11, 12, 13, 14, 15, 20, 22, 57, 68, 73, 78, 186, 200, 201, 202, and 211. *See* (Pl. Resp. to Def. Joint Mot. to Compel at 1, ECF No. 266). The Court reviewed each of these filings. None of them respond to the discovery requests; some of them contain at most a scattering of incomplete and self-annotated medical records.

When the defendants were forced to seek its intervention, the Court extended the discovery deadline and ordered production of "full and complete responses to Wiegand's interrogatories and document production requests, to include all requested medical records and/or authorizations" by May 24, 2024. (ECF Nos. 236, 249.) Shields never complied. He has claimed to be in the process of obtaining records from Jennersville Hospital Tower Health and PrimeCare Medical. *See, e.g.*, (ECF No. 276 at 5). But defendants asked (and the Court ordered) Shields to provide *either* the records *or* signed releases. Shields knows what to do and how to do it. He gave PrimeCare two authorizations for the release of records, but only to him. (ECF Nos. 186, 290.) The day

after the Court's May 9 Order, defense counsel sent Shields an authorization form, which he merely had to sign, date and return. (ECF No. 256.) He refused.

Even with the first sanctions motion pending, Shields thumbed his nose at the Court and counsel, forcing the Court to again extend the discovery deadline. (ECF No. 271.) Without his medical records or any meaningful responses to their discovery requests, and with the second amended discovery deadline approaching, defendants noticed Shields' deposition for September 5, allowing Shields to pick a different date if necessary. (ECF No. 273.) Hearing nothing back, defendants hired a court reporter, reserved a room and then sat and waited. Shields did not show up. *See generally* (Dep. Tr., ECF No. 275-3).

In just this abbreviated view[2] of Shields' dilatory behavior, Shields violated several rules meriting dismissal—he failed "to obey an order to provide discovery," in violation of Rule 37(b), failed "to appear for" his own deposition, in violation of Rule 37(d)(1), and failed "to obey [multiple] scheduling or other pretrial order[s]," all in violation of Rule 16(f)(1).

---

[2]   In the years preceding the January 30, 2024 Rule 16 conference, Shields similarly obstructed the discovery process. Defendants sent their initial set of interrogatories and document production requests on October 31, 2022. *See* (ECF No. 275-5). Shields attempted to dodge the interrogatories by invoking his "5th Amendment rights." (ECF No. 161.) Yet Shields had no problem sending defendants his own discovery requests, to which defendants responded. (ECF Nos. 160, 185, 250-2.) Similarly, on February 10, 2023, Shields filed a "motion to quash," to preclude defendants from receiving any of his medical records from Jennersville Hospital or PrimeCare. (ECF No. 196.)
   Shields was then directed at the Rule 16 conference to turn over all medical records or authorization forms. (Rule 16 Tr. 27:12-20.) That was the beginning of this, the final act of an unfortunate saga.
   Obtaining Shields' medical records was just defendants' first step in discovery. (Rule 16 Tr. at 23:1-4.) After four and a half years, Shields has not allowed them to do even that.

11

B

The fourth *Poulis* factor also favors dismissal.  Courts look to whether the dilatory party's conduct was willful, self-serving or in bad faith.  *See Roman v. City of Reading*, 121 F. App'x 955, 960 (3d Cir. 2005).  "The absence of reasonable excuses may suggest that the conduct was willful or in bad faith." *Id.*  Willfulness may be established by "repeated failure to observe court-imposed deadlines." *Id.*  A plaintiff's "numerous filings into the record . . . [can] clearly show[] that he was capable of responding to the court's orders and defendant's motions." *Thomas v. Benshaw, Inc.*, No. 21-553, 2024 WL 4170003, at *12 (W.D. Pa. Sept. 12, 2024).

Shields' conduct has, pretty much all along, been willful, self-serving and in bad faith.  At the Rule 16 conference, when asked if he understood his discovery obligations, Shields confirmed that he did because he is a certified paralegal who graduated at the top of his class.  (Rule 16 Tr. at 16:18-25.)  And throughout it all, Shields has been hyperactive in doing things he wants to do or filing things he wants to file.  But he has pretended to have no obligation to respond to the other side.  He bombarded the defendants and the docket when it served him, but didn't respond to discovery requests or show up for his deposition.  And after the Court turned down his October 15 request to hold the October 21 sanctions hearing by Zoom, Shields on October 16 filed another lawsuit against many of the same defendants with more allegations from the same night as his police chase.  *See* Shields v. East Lampeter Township et. al., No. 24-5475 (E.D. Pa. filed Oct. 16, 2024).  He then skipped the sanctions hearing.

And the Court cannot overlook Shields' perhaps most persistent prevarication—that defendants refused to provide him with the footage from Officer Wiegand's

dashcam.  Despite getting the footage in December of 2022, he kept claiming the defendants didn't give it to him.  (ECF Nos. 247-6, 254, 266, 285.)  He told the Court that "PSP Defendants have refused to provide any evidence to Mr. Shields in response to his request for discovery of MVR . . . and Defendant Ryan Wiegand has refused to provide the records as well."[3]  (ECF No. 266.)  None of that is true and Shields knows it.  On February 24, 2023, Shields himself sent a copy of Wiegand's full dashcam video to chambers.  (ECF No. 201.)  He frequently cited the video in his attempts to support his many other frivolous motions, such as trying to sanction defendants because their "objections have no legal foundation."  (ECF No. 210.)  Similarly, Shields has repeatedly claimed, as recently as October 25, that "Defendants willfully refuse to provide the MVR Video/Audio for police vehicle J1-22."  (ECF Nos. 276, 294-1.)  Again, this is false.  Shields clearly has the footage because he previously posted all the videos online, one of which is labeled "J1-22."  @SolishumSumerShields, YouTube, https://perma.cc/GMJ5-V354 (last visited Oct. 25, 2024).

C

The second *Poulis* factor also supports dismissal.  Prejudice may include "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party."  *Adams*, 29 F.3d at 874.  But this factor does not necessarily require a showing of

---

[3]  Shields' story regarding the MVR video has gradually changed.  First, he repeatedly referenced the MVR video he sent to the Court when attempting to support his other frivolous motions.  *See, e.g.*, (ECF Nos. 210, 219, 224).  When that did not work, he changed his narrative—he attempted to cast doubt on the Wiegand video's authenticity by asking for "chain of custody documentation" and a "sworn statement by any officer or other person who edited, <u>trimmed</u>, or altered" the footage.  (ECF No. 247-2 (emphasis in original).)  By May 10, 2024, his story was that he was "still waiting to obtain" the MVR evidence "from Ryan Wiegand and PSP defendants (which he has not received)."  (ECF No. 254.)

"irremediable" harm. *Id.* at 259. A delay that impedes the opposing party's ability to prepare effectively for trial may constitute prejudice if the impediment is sufficiently severe. *Id.*

Defendants have been forced to expend far too much time, effort and expense trying to wrest basic discovery from Shields. They have been unable to obtain information essential to their defense, including Shields' own sworn testimony as to what happened. They have been forced to file a motion to compel, which the Court granted, three motions to extend or vacate the discovery deadlines, which the Court granted, and two motions for sanctions, which the Court now grants. And they have sent countless e-mails and letters to Shields in an attempt to move the case along.

The sixth *Poulis* factor "presumptively weighs against dismissal" because some of Shields' claims survived the motion to dismiss. *Stockton v. Wetzel*, No. 21-029, 2023 WL 4138254, at *5-6 (M.D. Pa. June 22, 2023). Nonetheless, five of the six *Poulis* factors weigh strongly in favor of dismissal, the indisputably appropriate sanction under these facts and circumstances.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
Gerald J. Pappert, J.